The Farmers' Loan and Trust Company *v.* Carroll.

5　613
69h　41

Steuben General Term, September, 1849. *Maynard, Wells, and Marvin,* Justices.

The Farmers' Loan and Trust Company and others *vs.* Carroll and others.

C. proposed to the Farmers' Loan and Trust Co. to create a trust with the company of certain land in the county of L. and other property in the city of R., the company to advance him $75,000 in their certificates of trust running 20 years at an interest of five per cent. Before any arrangement between the parties was completed C. submitted a further proposition "to borrow from the F. L. & T. Co. $95,000, and to convey in trust, to secure the same," real estate valued at $190,853,90. A few days afterwards C. proposed to divide the trust, so as to make a trust in his own name of certain property estimated at $103,794,40, and to receive thereon, in the company's certificates of trust, $52,000, and to create a trust as executor of C. C., of other property estimated at $87,059,50, and to receive thereon $43,000 in similar certificates. The company thereupon consented to the creation of two distinct trusts, as proposed by

C. Accordingly C., by a deed absolute on its face, expressing the consideration of $52,000, and containing the usual covenants, conveyed the land in the county of L. to the company, in fee. On the same day the deed was given the parties entered into and executed certain articles of agreement and declaration of trust, whereby the company covenanted, promised and agreed that they would, in consideration of such trust, issue and deliver to C. their certificates of trust to the amount of $52,000 payable to him or his assigns, and to bear an interest of 5 per cent, redeemable in 20 years. And it was agreed that C. should apply such an amount of the certificates as should be required, or of the proceeds thereof, in payment and liquidation of the liens and incumbrances on the land. The company covenanted to make sales, and to grant, execute and deliver all conveyances of the said real estate to purchasers, whenever authorized and requested by C., and to receive the purchase moneys. C. was to be permitted to make contracts for the sale or lease of the real estate, subject to the approval of the company. It was made the duty of the company to collect, upon C.'s request, all moneys to become due upon securities taken from purchasers and lessees ; and they were authorized to make any such collections, or to make sales of the real estate, or any part thereof, at any time after two years, or sooner if necessary for the safety and indemnity of the company. The company were to appoint an agent resident in the county of L. to be approved of by C., with full powers to collect and receive on behalf of the company all moneys to become due upon contracts, bonds and mortgages given upon sales of land, and to deliver deeds, &c. It was also stipulated that all securities and conveyances, leases and sales to be made and entered into should be made to and with the company only, who were to receive all the moneys payable on such securities, &c. and to account for the same to C. C. agreed to pay and allow to the company interest at the rate of seven per cent for the said sum of $52,000 ; the difference between the interest agreed to be paid by the company on their said certificates (5 per cent) and the interest agreed to be paid by C., viz : two per cent, being declared and agreed to be the only compensation, allowance, or commission to the company for undertaking and executing the trust. And in case of the non-payment of the annual interest at any time for 30 days after it should become due, the company were authorized to sell and convey such portion of the real estate as would suffice to pay such interest. It was agreed that the moneys and securities paid, received, and taken by the company under such trust should be held by them as a distinct and separate fund and trust, and that it should at no time be reduced or diminished below an amount at all times sufficient to redeem the said certificates of trust. And the capital of the company was also pledged for their redemption. It was also agreed that the company should, upon the request of C., take and receive on its own account, such of the bonds and mortgages as should be given by purchasers of portions of the real estate worth double the amount secured thereby, and to be approved of by the finance committee of the company ; and that the amount of such securities should be passed to the credit of C. It was also provided that whenever the company should have received the said sum of $52,000, with interest, they should come to an account and

The Farmers' Loan and Trust Company *v.* Carroll.

settlement with C. of the said trusts, and pay over the balance due to him, if any, &c. And C. covenanted that in case the trust property and securities should be insufficient to pay to the company the $52,000 and interest, he would pay such deficiency, and that he would indemnify the company from all loss.

Similar instruments were executed by the parties in respect to the trust of $43,000 to C. as executor. And thereupon the company issued to C. 95 certificates of trust, under the seal of the company, for $1000 each, 52 of which were to C. in his own right, and 43 to him as executor. Each certificate certified that C. had deposited with the company, $1000 in trust, for 20 years, which sum the company agreed to pay to C. or his assigns, with interest at the rate of 5 per cent, payable semi-annually. At the time the certificates of trust were issued by the company they were worth, in the market, less than their nominal value.

*Held,* 1. That the legal effect of the execution and delivery of the instruments was to constitute a *loan* by the F. L. and T. Co. to C., and to secure the payment thereof by the latter; and that such was also the understanding and intention of the parties at the time.

2. That although the conveyances by C. to the company were absolute in terms, and assumed to convey the entire fee, yet as the agreements executed by the parties at the same time showed that they were intended only as securities in the nature of mortgages for the repayment of the loan of the certificates, that they were to be considered as mortgages.

3. That the parties, by the instruments and agreements in question, constituted neither a valid *trust* nor a *power in trust*, which could be lawfully executed by the company with the aid of a court of equity.

4. That the instruments could not be sustained as *covenants* on the part of C. to convey the lands when the company should dispose of them, or have a right to dispose of them, in order to pay the principal and interest of the loan.

5. That the agreement could not be enforced as a loan, 1st. Because the company did not possess the power of making loans; and 2d. Because the loan, and all the securities relating to it, were illegal and void as being in violation of the *usury laws.*

6. That the transaction was *usurious* upon its face, in making a difference of two per cent between the interest to be paid by the company upon their certificates, and that agreed to be paid by C. In other words that it was *per se* usurious.

7. That the arrangement being for a loan, upon usurious interest, and the certificates issued by the company being under seal, the holders or assignees of such certificates took them *cum onere,* chargeable with notice of all the material facts connected with their original concoction and subsequent mutations.

8. That as such certificates did not possess the ingredients of commercial paper, that fact was sufficient to put all persons dealing in them upon inquiry, and deprive the assignees thereof of any protection as innocent or *bona fide* holders.

The nature and properties of *trusts* considered and discussed.

Where a corporation relies upon a grant of power from the legislature, for authority to do an act, it is as much restricted to the *mode* prescribed by the statute, for its exercise, as to the thing allowed to be done. *Per* WELLES, J.

Distinction between an *estate in trust* and a *power in trust.*

The Farmers' Loan and Trust Company v. Carroll.

There can be no power in trust independent of the idea of a trust; i. e. there can be no power in trust without an appointee or beneficiary, other than the donee of the power.,

In all cases of a loan, where it appears, upon the face of the transaction, that the lender is in any manner to receive more than the legal rate of interest, as a compensation for forbearance upon the thing loaned, whatever the thing may be, it is usury per se. Per WELLES, J.

The doctrine of subrogation is a doctrine which prevails only in equity; and it applies only to lawful and meritorious transactions.

Where a transaction is void for usury, no one who has been connected with the transaction, or who stands chargeable with notice, is entitled to any benefit from any thing connected with, or growing out of it. Per WELLES, J.

In EQUITY. This case came before the court upon pleadings and proofs, in pursuance of an order made at special term directing the hearing to be had at general term. The facts, so far as are necessary to be stated in order to understand the opinion of the court, were substantially as follows: On the 9th day of December, 1837, the defendant Charles H. Carroll wrote to the president of the Farmers' Loan and Trust Company as follows, viz.:

"New-York, Dec. 9th, 1837.

*To Mr. Curtis, president of the Farmers' Loan Company.*

SIR. I wish to create a trust with your company of about 2800 acres of land in Livingston county, in the state of New-York, and of certain property in the city of Rochester, all of which will hereafter be more particularly described, as well as the objects of the trust.

Should your company accept of the trust, I wish them to advance me, in their certificates running twenty years at 5 per cent, interest semi-annually, seventy-five thousand dollars, ($75,000.)

The property to be included in the trust, to be estimated by disinterested appraisers at double the amount advanced in certificates, and the title to be made clear and indisputable, and free from incumbrances.

Will you do me the favor of answering this proposition as soon as the action of your company can be had thereon.

Yours, resp'y. (Signed) C. H. CARROLL.

P. S. The above application was made to your late president, the early part of last winter, and again last spring, and by his advice not presented to your company at either time, for reasons then satisfactory; but with an assurance from him that whenever the company commenced extending their business, that I should have his assistance in making the negotiation.         Yours, &c.         C. H. CARROLL."

After the trust committee of the company had had this letter under consideration, and had made a report to the directors, the president returned to Carroll the following answer, viz. :

"*Office of the Farmers' Loan and Trust Company,*
                New-York, December 20th, 1837.

C. H. CARROLL, Esq.

DEAR SIR: Your favor of the 9th inst. proposing to make a trust with the Farmers' Loan and Trust Company was duly received and came up this day before the trust committee. It is understood by the committee that you propose to make a trust of about 2800 acres of land (principally improved) in Livingston county, and certain property in the city of Rochester, together of sufficient amount to authorize the company in issuing their liability for $75,000. The committee received your application favorably, and a resolution was passed that the appraisement of the proposed property be referred to James Wadsworth, Phineas L. Tracy, James Seymour and Harvey Ely, Esquires, and unite with you in respectfully soliciting those gentlemen to act in the affair. Yours respectfully,

                    LEWIS CURTIS, Pres't."

At a meeting of the board of directors held on the 29th of December, 1837, an entry was made in their minutes as follows :

" A proposition of a trust by C. H. Carroll, Esq., of 2800 acres of land in Livingston county, and of certain property in Rochester, was submitted as partially acted upon by the trust committee, was approved, and was referred back to that committee, with power to complete the same."

Before any arrangement between the parties upon the subject was completed, Carroll, on the 21st day of February, 1838, submitted the following further proposition, viz.

"Charles H. Carroll proposes to borrow from the Farmers' Loan and Trust Company $95,000, and to convey in trust to secure the same,

| | |
|---|---:|
| Landed property, valued at | $143,283,90 |
| Rochester property, valued at | 47,570,00 |
| | |
| New-York, Feb'y 21, 1838. | $190,853,90 |
| L. W. Curtis, Esq. Pres't. | C. H. Carroll." |

At a meeting of the trust committee of the board of directors of the company, held on the 7th of March, 1838, the following communication was received from Carroll, and the following proceedings had thereon by the committee, viz. :

"Charles H. Carroll proposes to divide the trust he is about to create with the Farmers' Loan and Trust Company, on which they have agreed to advance him $95,000, in certificates upon property in his own name, estimated at $103,794,40, and upon property of the estate of Charles Carroll, deceased, $87,059,50, so as to make a trust in his own name, of the property estimated at $103,794,40, and to receive thereon, in certificates $52,000; and to create a trust as executor of Charles Carroll, of the property estimated at $87,059,50, and to receive thereon in certificates $43,000.

March 7th, 1838.          Charles H. Carroll."

"Whereupon it was Resolved, that two distinct trusts shall be created as requested by Mr. Carroll, one of them between him, individually, and the company, for $52,000, founded upon ――― acres of land in the county of Livingston; and the other between him, as executor of the will of said Charles Carroll, deceased, and the company, for $43,000, founded upon real estate in Livingston county and Rochester. Provided, said Carroll shall execute an instrument by which the company will be entitled to make good out of the estate conveyed by him to the company individually, any loss or deficiency which may arise in his trust as executor.

"The counsel of the company submitted the drafts of two several articles of agreement and declarations of trust, prepared in conformity with the foregoing resolution.

"Resolved, That said articles be severally approved and engrossed, and the officers of the company are authorized to execute the same."

In pursuance of the foregoing negotiations and proceedings between the company and Carroll, and after measures had been taken to have the lands proposed to be conveyed in trust, appraised, and searches and examinations made as to title and incumbrances, and previous to the sixth day of April, 1838, and on or about the 12th day of March of that year, the defendant Charles H. Carroll, by deed bearing date on the first day of March, 1838, conveyed in fee to the Farmers' Loan and Trust Company, certain real estate situated in the county of Livingston. The deed contained the usual covenants of seisin, for quiet enjoyment, against prior incumbrances, for further assurances, and of warranty. The consideration expressed in this conveyance was $52,000. It was duly acknowledged on the 12th day of March, 1838, and recorded in the office of the clerk of Livingston county, on the 20th March, 1838, as a deed, and on the 30th April, 1842, as a mortgage.

Cotemporaneously with the execution of said deed of conveyance, the parties thereto entered into and duly executed an instrument in writing in the words and figures following, viz:

"*Articles of agreement and declaration of trust*, made and entered into this first day of March, in the year of our Lord one thousand eight hundred and thirty-eight, by and between the Farmers' Loan and Trust Company of the first part, and Charles H. Carroll of the town of Groveland, in the county of Livingston, and state of New-York, of the second part, witnesseth, whereas the said party of the second part is the owner of certain real estate situate in the said county of Livingston; and whereas there are several charges, incumbrances or liens now outstanding and existing upon said real estate; and whereas the said Charles H. Carroll being desirous of having the said

real estate converted into cash and available securities, by the sale of the same in suitable parcels and at convenient times, the said Farmers' Loan and Trust Company have agreed to accept a conveyance of the said real estate, and assume, perform and execute for and on account of the said Charles H. Carroll, the trust hereby declared and agreed upon between them, in relation to the said real estate ; and whereas, in pursuance of the said agreement, the said Charles H. Carroll hath, on the day of the date hereof, executed and delivered a conveyance in fee of the said real estate to the said the Farmers' Loan and Trust Company ; now this agreement witnesseth that the conveyance of the said real estate as aforesaid is made by the said Charles H. Carroll, and accepted by the said the Farmers' Loan and Trust Company, upon the special trusts and agreements hereinafter particularly declared of and concerning the same. And the said parties hereto do hereby covenant, promise and agree with each other as follows, to wit: *First.* The said the Farmers' Loan and Trust Company do hereby covenant, promise and agree that they will, in consideration of the aforesaid trust, and with a view to enable the said Charles H. Carroll to pay off and satisfy all the charges, liens or incumbrances upon the said real estate, immediately after the execution of this agreement, execute and deliver to the said Charles H. Carroll their certificates of trust, in the usual form adopted by them, to the amount in the aggregate of fifty-two thousand dollars, to be made payable to him or his assigns, the said certificates of trust to bear an interest of five per centum per annum, payable half-yearly, redeemable in twenty years. *Second.* It is understood and hereby agreed, that the said Charles H. Carroll shall and will apply such an amount of the said certificates as is required for that purpose, or of the proceeds arising from any disposition he may make of the same, in payment and liquidation of the said charges, liens or incumbrances upon the said real estate. *Third.* The said the Farmers' Loan and Trust Company are to make sales and grant, execute and deliver all conveyances of the said real estate and premises, to purchasers thereof, whenever duly authorized and requested by the said Charles

H. Carroll or his assigns, the said the Farmers' Loan and Trust Company to decide in the first instance upon the sufficiency, and to receive the consideration moneys obtained from such purchasers as hereinafter provided, it being expressly understood and agreed that the said the Farmers' Loan and Trust Company shall not be required to give or enter into any covenants of warranty in respect to the title to said real estate; but if required by the said company, or the purchasers to said real estate, or either of them, the said Charles H. Carroll or his assigns, shall unite in the execution of said conveyance, and shall therein give and enter into the usual and customary covenants of warranty. *Fourth.* The said Charles H. Carroll or his assigns, is to be permitted to make contracts for the sale or lease of the real estate, or parts thereof, in such manner as he may deem most for his interest, provided such sales and leases do not impair or diminish the security of the said the Farmers' Loan and Trust Company, and are approved of by the said company, and also subject to the right of the said the Farmers' Loan and Trust Company, to receive and take all moneys and securities which may arise from any such contracts or sales, to be held and accounted for by them until a final settlement of said trust is had and made between them and the said Charles H. Carroll or his assigns. *Fifth.* It shall be the duty of the said the Farmers' Loan and Trust Company to collect by legal process or otherwise, upon the request of the said Charles H. Carroll, all moneys which may from time to time become due upon bonds and mortgages, leases and contracts, taken and received by said company, from purchasers and lessees of said real estate, and shall also be authorized to make any such collections, or make any sale or sales of the whole or any part of the said real estate and premises, at such price or prices as the company may deem proper at any time after ten years from the date hereof, and at any time sooner, should it become necessary for the safety and indemnity of the said the Farmers' Loan and Trust Company. *Sixth.* The said the Farmers' Loan and Trust Company shall, from time to time, appoint an agent, resident in the county of Livingston, to be approved of

by the said Charles H. Carroll or his assigns, with full powers, and whose duty it shall be to collect and receive, on behalf of the said the Farmers' Loan and Trust Company, all moneys due or to become due upon any contracts for the sale of lands, and upon any bonds and mortgages which may be given upon any sale of lands, and to deliver deeds for said lands, executed by the said the Farmers' Loan and Trust Company, to the holders of contracts, upon receiving from the purchasers the amount of purchase money then remaining due or agreed to be paid thereon, or upon receiving bonds and mortgages on the premises so conveyed, for a portion of the purchase moneys as may be agreed upon and approved by the said the Farmers' Loan and Trust Company, the proceeds arising from all such collections by said agent, to be forthwith accounted for and paid over to the said the Farmers' Loan and Trust Company, in such manner as the said company shall from time to time direct. *Seventh.* All bonds, mortgages, contracts and other securities, and all conveyances, leases and sales made, executed and entered into, under and by virtue of this agreement, shall be made to and with the said the Farmers' Loan and Trust Company only, who are to receive all moneys with legal interest thereon, payable and collected upon such securities and sales to be made and received by the said the Farmers' Loan and Trust Company, and to be accounted for by them to the said Charles H. Carroll or his assigns, upon the closing of the said trust as aforesaid. *Eighth.* The compensation to be allowed to any agent appointed by the said the Farmers' Loan and Trust Company, under and by virtue of the sixth article of this agreement, shall be fixed by said company, which compensation, together with all other necessary and reasonable expenses and payments made on account of the faithful execution of said trust, including taxes upon the said real estate, shall be paid and deducted by the said the Farmers' Loan and Trust Company, in the first instance, out of any moneys which may be received by them on account of said trust, which payments, with the interest thereon, shall be allowed to the said the Farmers' Loan and Trust Company by the said Charles H. Carroll

and his assigns, on the final closing of the said trusts.    *Ninth.*
The said the Farmers' Loan and Trust Company hereby stip-
ulate and agree to execute and fulfil any outstanding leases
heretofore made and entered into by the said Charles H. Car-
roll, for the leasing of parts of said real estate, according to the
terms thereof.    *Tenth.* The said Charles H. Carroll shall pay
and allow, annually, to the said the Farmers' Loan and Trust
Company, interest at the rate of seven per centum per annum
upon the said sum of fifty-two thousand dollars, such interest
to commence from the day of the delivery of the certificates of
trusts, to be executed by the said the Farmers' Loan and Trust
Company, as aforesaid, the difference between the interest paid
by the said the Farmers' Loan and Trust Company upon their
said certificates of trust, and the interest to be allowed and paid
by the said Charles H. Carroll, as aforesaid, being two per
centum, is hereby declared and agreed between the parties
hereto, to be the only compensation, allowance or commission,
to the said the Farmers' Loan and Trust Company, for under-
taking and executing the trust hereby created and to be per-
formed by them ; and it is hereby expressly understood and
agreed, that should the said annual interest, or any part thereof,
remain unpaid for thirty days after the period when the same
ought by the terms hereof to be paid, the said the Farmers'
Loan and Trust Company may at their option sell and convey,
at any time after the expiration of said thirty days, at public
or private sale, such portion of said real estate as will be suffi-
cient to pay and satisfy such unpaid interest.    *Eleventh.* The
moneys and securities paid, received and taken by the said the
Farmers' Loan and Trust Company under and by virtue of the
trusts hereby created, shall be held by them as a distinct and
separate fund and trust, apart from all other trusts assumed and
taken by them, and the said company hereby covenant for
themselves and their successors, that said trust moneys and se-
curities shall at no time be diminished or reduced below an
amount at all times sufficient to redeem the certificates of trust
granted to the said Charles H. Carroll, as aforesaid ; and further,
that the capital of the said the Farmers' Loan and Trust Com-

pany shall at all times stand pledged, and hereby is pledged for the faithful payment and discharge of the said certificates of trust, and the interest therein agreed to be allowed, at the several times when the said certificates and interest moneys shall be redeemable and payable by the terms thereof. *Twelfth.* It is understood and agreed that the said the Farmers' Loan and Trust Company shall, upon the request of the said Charles H. Carroll, or his assigns, assume, take and receive, on the account of said company, such of the bonds and mortgages as shall be given by purchasers of portions of the said real estate; the said real estate so mortgaged shall be valued by two appraisers to be selected by the said the Farmers' Loan and Trust Company, as worth at least double the amount to be loaned upon the same, and to be approved of as sufficient and adequate security by the finance committee of said company. The bonds to be payable within ten years from the date hereof, at seven per cent interest per annum, payable annually, and no one mortgage is to exceed in amount the sum of ten thousand dollars, and when taken and received as herein above mentioned, the amount thereof with the interest which may have accrued thereon, is to be passed to the credit of the said Charles H. Carroll, or his assigns. *Thirteenth.* Whenever the said the Farmers' Loan and Trust Company have received the said sum of fifty-two thousand dollars, with the interest thereon, payable annually as aforesaid, either from the sales of said real estate, from bonds and mortgages or otherwise, or by the holding of bonds or mortgages executed to them, and which they may assume and take on their own account, under the twelfth article of this agreement, or shall receive payment of the full amount due to them by the said Charles H. Carroll, at any time, the said the Farmers' Loan and Trust Company shall, upon the request of the said Charles H. Carroll or his assigns, immediately thereafter come to an account and settlement of the trusts hereby created, and shall thereupon convey, assign, transfer, deliver and pay over to the said Charles H. Carroll, or his assigns, the remaining unsold lands, bonds and mortgages, and other securities, and all moneys, contracts for sale, and all evi-

dences of title in their hands, relating to said trust, the said Charles H. Carroll, or his assigns, at the time of such transfer, executing and delivering a full and complete release and discharge to the said the Farmers' Loan and Trust Company; in relation to the execution of said trusts; and should the said real estate, mortgages and other securities at any time prove to be insufficient to reimburse the said the Farmers' Loan and Trust Company the said amount of fifty-two thousand dollars, with the interest thereon, the said Charles H. Carroll doth hereby covenant, promise and agree that he, his executors and administrators will well and truly pay or cause to be paid any such deficiency, and will at all times indemnify and save harmless the said the Farmers' Loan and Trust Company of and from all loss or damage by reason of or on account of the said trust and the execution of these presents. In witness whereof, the said the Farmers' Loan and Trust Company have caused their corporate seal to be hereto affixed, and the same to be signed by their president and attested by their secretary, and the said Charles H. Carroll hath hereunto set his hand and seal the day and year first above written.

Lewis Curtis, Pres't.　[L. S.]

R. K. Delafield, Sec'y.

C. H. Carroll."　　[L. S.]

Sealed and delivered in the

  presence of Wm. P. Powers,

     W. G. Wood.

This instrument was duly acknowledged, and was recorded in the clerk's office of Livingston county, on the 30th April, 1842, in the records of deeds, and also at the same time in the records of mortgages.

At the same time of the making and execution of the foregoing deed and instrument in writing, the said Charles H. Carroll, as executor of the last will and testament of Charles Carroll deceased, by two deeds of the same date as the former, conveyed to the said Farmers' Loan and Trust Company certain other real estate, situated in the counties of Monroe and Livingston. These last two deeds were expressed to be for the

consideration of $43,000, and conveyed the premises therein described to the Trust Company in fee, and contained covenants for quiet enjoyment and against prior incumbrances. They were in all respects alike, excepting that one of them embraced lands in Livingston county, and the other in Monroe county. They were acknowledged by the grantor, on the 12th March, 1838, and the one for lands in Monroe county, recorded in the clerk's office of that county, as a deed, on the 19th day of March, 1838, and as a mortgage, on the 30th April, 1842; and that for lands in Livingston county, in the clerk's office of the latter county, as a deed, on the 20th of March, 1838, and as a mortgage on the 14th of May, 1842.

At the time of the execution of the last two deeds the parties thereto executed another instrument in writing, of the same date with the deeds, in which the said Charles H. Carroll is described as executor of, &c. of the said Charles Carroll deceased, and which is similar in its provisions to the one above set forth, except that it relates to the last two conveyances, and the lands therein described, and provides for the issuing by the company of certificates of trust to the amount of $43,000, and Carroll subscribed it as executor. This instrument was also recorded in Monroe county, in the records of deeds, and also of mortgages, on the 30th of April, 1842, and in like manner, in Livingston county, on the 14th of May of the same year.

At the same time of the making and executing the said deeds and instruments in writing, the said Charles H. Carroll made and executed under his hand and seal, and delivered to the said Trust Company a covenant bearing date on the said first day of March, 1838, reciting therein the said deeds and instruments in writing, and also reciting that the said trust, created by said Carroll as executor of said Charles Carroll deceased, was agreed to and created upon the condition and understanding that should the property conveyed by him as executor as aforesaid, to the said company, prove insufficient to reimburse the said company the said sum of $43,000, advanced to him as such executor, together with the interest thereon, the said company should be entitled to repay themselves such deficiency

The Farmers' Loan and Trust Company *v.* Carroll.

out of the trust premises conveyed to them by the said Charles H. Carroll individually, after refunding to the said company the said sum of $52,000, advanced by them in their said trust certificates, and the interest thereon, and he the said Charles H. Carroll in and by said covenant, in consideration of the premises and of one dollar to him in hand paid, thereby for himself and his heirs and assigns, did covenant, consent, promise and agree to and with the said company, that the said company should and might take, hold and retain and enjoy the premises conveyed by him individually to them as aforesaid, until the winding up and final settlement of the trust created by him with them as executor as aforesaid, and should, and might in the event of their sustaining any loss by reason of said last mentioned trusts, reimburse themselves out of the premises conveyed to them by him individually, as aforesaid ;. and he, the said Charles H. Carroll, did also thereby further covenant, promise and agree that he would at all times indemnify and save harmless the said Farmers' Loan and Trust Company of and from all loss or damage which they might sustain or be put to by reason of the creation of the said trust with him as executor as aforesaid.

In the certificates of individuals to whom reference on the subject was had of the valuation of the property to be conveyed, furnished to the company by Carroll, during the previous negotiations, the transaction is spoken of as a loan. The one respecting the lands in Livingston county is headed as follows, viz :

" Charles H. Carroll, of the town of Groveland, in the county of Livingston and state of New-York, is an applicant to the Farmers' Loan and Trust Company, for a loan of $71,641,95, upon the following premises, situated in the towns of Groveland and Sparta, in the county of Livingston, as will appear by reference to the maps hereto annexed, viz : " Then follows a specification of the different parcels of land with the valuations, and concludes as follows, viz :

" We, William Finley, of the town of Geneseo, in the county of Livingston, William H. Spencer, of the town of York, in the county of Livingston, and Simeon Cummings of the town of Batavia, in the county of Genesee, do certify that we are well acquainted with the above described premises, having made particular examinations of the same, and have valued the several parcels thereof at the prices above stated. We have valued the same upon a cash sale, and we have no hesitation in expressing our entire confidence in the sufficiency of said property to secure in any event the loan of $71,641,95, proposed to be obtained of the Farmers' Loan and Trust Company, upon the said 2969,88 acres of land, or the sufficiency of any of the above named pieces of land to secure a loan in the same proportion to the valuation thereto annexed.

WILLIAM FINLEY, &#125;<br>
WM. H. SPENCER, &#125; *Appraisers.*<br>
S. CUMMINGS.

Dated Groveland, January 13th, 1838."

The certificate by the appraisers of the property in Monroe county, also speaks of the transaction as a loan, in a similar way.

Upon the execution of the foregoing several deeds and instruments in writing, the Farmers' Loan and Trust Company issued ninety-five certificates of trust, for $1000 each, fifty-two of which were to Charles H. Carroll in his own right, and the remaining forty-three were to him as executor, &c. The following is the form of those to Carroll in his own right, viz:

" *United States of America,* State of New-York. Farmers' Loan and Trust Company. Capital $2,000,000. Certificate of trust. Interest five per cent. per annum. (L. Cert. No. —.) (L. $1000.) This certifies that Charles H. Carroll has deposited with the Farmers' Loan and Trust Company, the sum of one thousand dollars, in trust, which sum is to remain in trust with the said company, for the period of twenty years, from the 1st March, 1838, ending on the 1st March, 1858, and shall be irredeemable for that period.

Interest at the rate of five per cent. per annum, shall be paid by the said company, semi-annually, on the above mentioned sum of one thousand dollars, to the said Charles H. Carroll, or to his assigns, on presentation of the coupons hereto annexed. On the 1st day of March, 1858, the principal sum above mentioned, and the interest then due, shall be paid to the said Charles H. Carroll, or to his assigns.

In witness whereof the said company have caused this certificate of trust to be attested in their behalf, by their president and secretary, and their common seal to be [L. s.] hereunto affixed, at their office, in the city of New-York, this first day of March, in the year of our Lord one thousand eight hundred and thirty-eight.

LEWIS CURTIS, President.

R. K. DELAFIELD, Secretary."

The semi-annual instalments of interest were provided for by forty *coupons*, attached to each certificate, varying from each other only in the statement of the time when the interest would become due for which they were respectively designed. The following is the form of the *coupon* for the last instalment of interest, the rest corresponding except in the particular mentioned, viz :

" To the cashier of the Phenix Bank of New-York. Pay the bearer twenty-five dollars, being half a year's interest, due first Monday in March, 1858, on a certificate of the Farmers' Loan and Trust Company, No. —, for one thousand dollars.

L. $25.                                        R. K. D. Sec'y."

At the time of the execution of the deeds by the said Charles H. Carroll in his own right and as executor as aforesaid, some of the lands described therein were encumbered by two mortgages given by said C. H. Carroll, one to Luke Tiernan of Baltimore, dated October 7, 1825, upon which was due over $25,000, and the other to Sarah Brinton, of Philadelphia, dated March 1, 1832, upon which was due over $6000. The mortgage to Tiernan was executed by the defendant Carroll, as executor, &c. and was given upon lands of which the testator

Charles Carroll died seised, and to secure a debt owing by him, in his lifetime, to the said Tiernan.

After the execution by the Trust Company of the $95,000 of trust certificates, and on the 5th day of April, 1838, they were placed in the hands of one Powers, an agent of the Trust Company, who thereupon, in company with the defendant C. H. Carroll, went from the city of New-York to the city of Baltimore, for the purpose of receiving discharges of the above mentioned mortgages, taking the certificates with him. The certificates were placed in Powers' hands by the Trust Company, with instructions to deliver them to said Carroll, on receiving from him the necessary discharges of the incumbrances, at the same time Carroll executing to the company a receipt for the certificates. While at Philadelphia, on their way to Baltimore, Carroll procured the mortgage to Mrs. Brinton to be satisfied, which mortgage, with the certificate of satisfaction in due form, was delivered to Powers by Carroll. Failing to procure a satisfaction of the Tiernan mortgage on this occasion, Powers and Carroll returned to New-York with the certificates, which were soon after put into the hands of Auguste Belmont, the agent in New-York, of the house of N. M. Rothschild & Son, of London, to be remitted to the house in London for sale; Belmont advancing sixty per cent. on their par value, and paying the amount of such advance to the Trust Company in the name and for the account of Carroll, the latter stipulating to leave with the company $26,000 thereof, which should not be drawn for, until the Tiernan mortgage was assigned to the company, which $26,000 was left by Carroll with the company for the payment of what might be due on that mortgage.

The certificates were forwarded by Belmont to London, to be sold in market according to Carroll's instructions, at the limit of the London price, 83 per cent. on their nominal amount or better, within forty-five days after their receipt, and at the expiration of that time, if not sold, at the best rate obtainable in the market. The certificates were sold by the Rothschilds in the course of the summer of 1838, and the amount paid into the company by Belmont, for the benefit of Carroll, which in-

cluding the advance of sixty per cent. was $82,575,53. This was the whole proceeds of the sales, after deducting expenses, commissions, &c. and which was paid by the company upon Carroll's drafts, deducting the amount of the Tiernan mortgage, which had been on the 5th of May, 1838, assigned to the company.

The defendant, C. H. Carroll, was appointed by the company their agent in Livingston county, under the 6th article in the agreements called declarations of trust. He paid to the company the interest on the nominal amount of the trust certificates, $95,000, up to the 1st September, 1839, and nothing has been received by the company on account of the said transactions with Carroll at any other time before or since. On the 16th of August, 1842, the Trust Company, by their secretary, wrote Carroll, enclosing an account of interest, which it was claimed, would be due the company on the first of September following, and notifying him that payment of the amount then to become due, would be required on or before the 15th of that month, in default of which an order would be immediately thereafter issued for its collection by legal proceedings, and his powers as agent of the company would be discontinued. The amount of interest which it was claimed by the company would be due from Carroll on the first of September, 1842, was $19,950.

Not hearing from Carroll in reply, the company, on the 14th of November following, wrote him again, requesting payment of the said $19,950, interest due the first of September previous, to which they received an answer as follows, viz:

" *Groveland Center, Nov.* 23, 1842.

ROBERT C. CORNELL, Esq.

　　　　President of Farmers' Loan and Trust Company:

SIR, I have received your letter of Nov. 14th, inst., by Robert W. Lowber, Esq., with accounts accompanying same, from which you claim a balance due from me to your company, of nineteen thousand nine hundred and fifty dollars, and request me to pay the same to Mr. Lowber.

I deny, as I have heretofore done, any indebtedness to your company, and again request that you will either desist from setting up any claims against me, or at once proceed to adjudicate the same.

I am, sir, very respectfully, your obedient servant,

C. H. CARROLL."

The company thereupon revoked Carroll's powers, and appointed another agent in his place, under the said 6th article of the agreements or declarations of trusts. Carroll retained the possession of the lands, and refused to give up the possession to the company, or their new agent.

On the 14th of December, the company advertised a portion of the lands embraced in the deed made to the company by Carroll in his own right, to be sold at the court house in Geneseo, Livingston county, on the 6th of January following, for the payment of the interest due. This sale was prevented by injunction from the court of chancery, upon a bill filed by Carroll.

The plaintiffs, Carpenter, Paull and Chapman, are purchasers and holders of a portion of the trust certificates, residing in London. The bill in this case, after setting forth the foregoing, with various other matters, charges and pretences, not necessary to be mentioned, concludes with the following prayer, viz:

" And that the said deeds and declarations of trust, and each of them, may be decreed and declared to have been and to be effectual between the said company and the said Charles H. Carroll, to establish and create trusts valid and operative in law, by and between them and every other person or persons, and capable of being executed and enforced by the said company as such trustees, according to the terms thereof respectively, or by and with the aid, and under the sanction and decree of this honorable court; and that the legal titles of the said lands and premises in the said deeds and declarations of trust mentioned, may be declared and decreed to have been and to be vested in the said company under the said deeds and declarations of trust,

The Farmers' Loan and Trust Company *v.* Carroll.

for the purposes and objects therein specified ; and that the said company may be permitted to sell the said lands and premises, or that the same may be decreed to be sold by and under their direction, or of one of the masters of this court, for the purpose of satisfying, to your orators, their costs of this bill of complaint to be taxed, and the amount so due to the said company for interest, as hereinbefore stated, and the principal when the same shall become due, and the interest that may accrue to the said certificate holders, and each of them, or to the said company in trust for them ; and that upon such sale, a deed or deeds may be executed by the said master (if the same shall be under his direction, in which deed the said company hereby offer to unite) or by the said company, which deed or deeds shall be decreed to convey an indisputable title to the purchaser or purchasers of such premises, and every part thereof.

Or that the said deeds and declarations of trust may be declared to have been created in, and to have invested your orators, the said company, with a power or powers in trust for the sale of the said land and premises on default of payment of the said interest, and for the said advances so made by your orators and the other holders of the said certificates, and for the sums paid, and procured to be paid by the company, upon and for the said mortgages, and the other liens, charges and incumbrances hereinbefore mentioned ; and that it may also be declared and decreed that such sales shall now take place, such default having actually occurred, and the same being necessary for the safety and indemnity of the said company ; and that said sale be made by the said company, by or under the authority of this court, or by or under the authority of one of the masters of this court ; and, that on such sale, a deed or deeds may be given by the said company, or by the said master, if the said sale shall take place under his direction, in which deed the said company offer to unite, which said deed or deeds shall be declared and decreed to convey and confer a valid title to the said lands and premises, free from any lien, claim or incumbrances by judgment, decree, or otherwise, against the said Charles H. Carroll, subsequent to the execution and delivery

of the said deeds and declarations of trust; and that from the proceeds of such sale, your orators, together with all the said certificate holders, may be paid the amount due, and to become due to them respectively, as hereinbefore mentioned, and the costs of this bill of complaint ; or if it shall seem to your honor that the said deeds and declarations of trust amount to mortgages, and it shall be agreeable to equity and good conscience, then that an account may be taken of the several sums of money now being and remaining due to the said company, and the amount to become due to them and the said certificate holders, for principal and interest, according to their respective rights and interests under the said declarations of trust ; and that the said Charles H. Carroll may be decreed to pay the same, together with the costs of this bill of complaint, at a short day, to be appointed by this court, and that your orators, the said company, as trustees for the said certificate holders, may be decreed to be substituted to the place of the said Sarah Brinton and the said Luke Tiernan in respect to the mortgages hereinbefore mentioned, and the several sums of money due thereon, and to the said liens, charges, or incumbrances and debts against the estate of the said Charles Carroll, deceased, and to all sum or sums of money due thereon, and that an account may be taken of the same by one of the masters of this court, and that he, the said Charles H. Carroll, may be decreed to pay the same at such short day as aforesaid, or in default thereof, that the defendants to this bill of complaint hereinafter named, and all persons claiming or to claim under them and each of them, may be absolutely barred and foreclosed of and from all right and equity of redemption of and in the said lands and premises and every part thereof, your orators, the said company, hereby offering upon payment of the money so due and to become due to them and to the said certificate holders respectively, or upon the same being paid into court for their use, together with the costs of this suit, to unite and concur in all necessary acts and deeds for conveying the said lands and premises, or any part thereof, in such manner as this court shall be pleased to direct, if it be necessary so to do, or that all and

singular the said lands and premises may be sold under the order and decree of this court, and out of the moneys arising from the sale thereof, your orators may be paid, the costs of this bill of complaint, and the full amount of their advances and payments on account of the said trusts, liens, mortgages, charges and incumbrances, and the principal and interest due and to become due to them and the said certificate holders respectively, according to their several interests as hereinbefore stated, your orators, the said company, hereby offering to unite in any conveyance of the said lands and premises, or any part thereof, under the direction of this court.

Or that the said deeds and declarations of trust may be decreed and declared to have been, and to be valid as instruments for the creation of trusts at law and in equity, and capable of being executed by your orators, the said company, under the direction of this court, and that the same may be so executed and carried into effect under the decree of this court, in such manner as may seem meet and agreeable to equity and good conscience.

Or that the said lands and premises may be declared and decreed to be held by your orators, absolutely free, clear, and divested of any and all claim or demand, right, title, or interest of any of the defendants hereinafter named ; and that your orators, the said company, have full power and authority to sell the same, or that it may be referred to one of the masters of this court to take and state an account of the amount now due, and hereafter to become due, to the said company, and to the said certificate holders, and each of them, under and by virtue of the covenants in the said declarations of trust contained, and to which they are respectively entitled, upon the facts hereinbefore stated, with interest thereon ; and that the said lands and premises may be sold to satisfy the same, under a decree of this court, your orators, the said company, offering to unite in the conveyances to be given on such sale, if necessary.

And that an account may be taken of all sums and amounts of money received, and for which the said Charles H. Carroll has become liable under the said declarations of trust, and the

said powers of attorney for or on account of any contracts, sales, and conveyances of the said lands and premises, and the rents, issues and profits thereof; and that he, the said Charles H. Carroll, and the said William T. Carroll, and Robert Van Rensselaer, may be decreed to pay the amount which shall be found due on such accounting, with interest, to the said company, on account of and as a part of such trust estate, to be held by them, as well for their protection and indemnity as for the said certificate holders and each of them.    .

And that the said Charles H. Carroll may, by the order and injunction of this honorable court, be enjoined and restrained from collecting and receiving any sum or sums of money for or on account of the said lands and premises, and from any sales, contracts or agreements made, or to be made in relation thereto, or to any part thereof, and from receiving, or in any way interfering with the rents, issues and profits thereof, and of every part thereof, and from selling, disposing of, contracting to sell, conveying, or in any way incumbering the said lands and premises, and every part thereof, until the further order of this court; and that a receiver or receivers of the said lands and premises, and of the said rents, issues and profits thereof, and the amount due and to become due upon contracts for the sale thereof, may be appointed by this court, during the pendency of this bill of complaint, and that the said Charles H. Carroll may be compelled to assign and deliver to the said receivers upon oath, under the directions of a master of this court, all contracts, agreements, leases and demises of or in relation to the said lands or any part thereof, and all sum and sums of money due or to grow due thereon; and that your orators may have such other or further relief, with any or all the preceding kinds of relief as to your honor shall seem meet and agreeable to equity and good conscience, or that your orators may have some, or one, or all the kinds of relief hereinbefore prayed for, and with them, or some, or one of them, such other relief as the nature of the case may require, and may be agreeable to equity and good conscience."

The defendants put in their answers, to which replications were filed, and proofs were taken in the cause.

The cause was argued by

*H. Denio & Wm. Curtis Noyes*, for the plaintiffs.

*A. Worden & J. C. Spencer*, for the defendant C. H. Carroll, and

*C. P. Kirkland*, for the other defendants.

Points and authorities submitted on the part of the plaintiffs. I. The Farmers' Loan and Trust Company were authorized by their charter, and the acts amending the same, to receive and execute a trust of real estate, and in particular to receive and execute the trusts mentioned in the bill in this cause. (*Angell & Ames on Corporations*, 2d ed. pp. 100, 105. 2 *Kent's Comm.* 3d ed. 279. 12 *Mass. Rep.* 556. 3 *Pick. Rep.* 237. 1 *Paige*, 214. *Hill on Trustees*, 48. 2 *Howard's U. S. Rep.* 127. *Laws of* 1822, p. 47, §§ 1, 19. *Id.* p. 254, § 2. *Laws of* 1836, p. 281, §§ 2, 3, 6.) II. The purposes for which the trusts in this case were created, are expressly authorized by the revised statutes, being to sell the lands for the benefit of creditors, and for the purpose of satisfying charges thereon. (1 *R. S.* 728, § 55, *sub.* 1 *and* 2.) The creditors in this case were creditors by mortgage, which mortgages were specific liens upon the real estate, and also upon debts due from the estate of Charles Carroll, deceased, which, by the express language of his will, were made a charge upon his real estate, and they were also made specific charges by the language of the revised statutes. (2 *R. S.* 452, §§ 32 *and* 51. 1 *Barb. S. C. Rep.* 271.) III. The deeds and declarations of trust, taken together, show a manifest intention to create lawful trusts for a legal purpose, making the usual provisions for compensation to the trustee for trouble and responsibility; and none of these provisions give the transactions any other character than that of trusts. (1 *R. S.* 740, § 2. *Hobart's Rep.*

277. 1 *Ventris*, 141.   2 *Brod. & Bing.* 49.  22 *Wend.* 483.   *Coke Litt.* 272 B.   *Saunders on Uses and Trusts*, 7, *Just. Inst. lib.* 2, *tit.* 23, § 1.    *Willis on Trustees*, 1.   4 *Kent's Comm.* 4*th ed.* 288.   3 *Hill*, 95.   *Lewin on Trusts*, 498, 512. 1 *R. S.* 725, § 35.   *Id.* 730, § 63.   2 *Wheaton*, 45.   4 *Nev. & Man.* 668.   3 *Ad. & Ellis*, 99.)   IV. If the deeds and declarations of trust taken together, do not create valid trusts *per se*, yet they do create *powers in trust*, and these powers may be lawfully executed by the company ; at all events, with the aid of a court of equity, for the purposes specified in the declarations of trust.  (1 *R. S.* 732, §§ 74, 75, 77, 78, 94.   *Id.* 735, §§ 107, 108, 109.   *Id.* 734, §§ 96, 103.   *Id.* 730, § 63. 14 *Wend.* 323.   22 *Id.* 483.   1 *R. S.* 729, § 58.   6 *Watts & Serg. Rep.* 190.   2 *Cowen*, 246.   7 *Paige*, 509.   2 *Barb. Ch. Rep.* 271, *and cases there cited.*)  V. If the instruments executed between the parties should be held invalid as trusts, and as powers in trust, they are still sustainable as covenants on the part of the defendant Charles H. Carroll, to convey the lands when the company should dispose of them or have a right to dispose of them, in order to satisfy the charges for which the agreements were entered into, and which, in fact, yet remain unpaid.  These covenants, as such, may be specifically enforced, so as to promote the equity and justice of the case, and the intent of the parties.   VI. The instruments executed by the parties do not amount to, nor are they mortgages, but simply what they purport to be, conveyances and declarations of trust.  (*Powell on Mort. new ed.* 10, *note, and* 12, *note.* 8 *Lond. Jurist*, 366.   3 *Hill*, 95.   *Sugden on Vendors and Purchasers, App.* 4, 11.   18 *Vesey*, 344.)   VII. As to the individual property of the defendant Charles H. Carroll, there can be no doubt he was authorized to create the trust ; and as to the real estate of Charles Carroll, deceased, of whom he was executor, he had, under the will, ample power and authority to execute the deed and declaration of trust, and thereby provide for the payment of the debts of the testator, which by his will, as well as by the statute, were charges upon it.  (1 *Jarman on Wills*, 172, 181.   2 *Id.* 396, *note.*   *Id.* 512, 520.

1 *Ad. & Ell.* 229.  11 *John.* 365.  13 *Id.* 537.  *Williams on Ex'rs.* 413, 531, 532.  *Fletcher on Estates,* 66.  *Id.* 4, 76.  4 *Kent's Com.* 320.  3 *R. S. App.* 385.  1 *Powell on Devises,* 243, 3d ed.  1 *Powell by Jarman,* 245 and note. 7 *Cowen,* 193.  2 *Wend.* 1.  12 *Id.* 602, 663.  1 *Vesey, jr.* 134.  5 *Paige,* 323.  *Lewin on Trusts,* 264, 265.  1 *Powell on Devises,* 234, note 9.  1 *Sugden on Powers,* 538.  2 *Id.* 298.  3 *Sandf. Ch. Rep.* 117.)  VIII.  There was no usury in the transactions.  (*Lewin on Trusts,* 444.  9 *Paige,* 398. 2 *Metc. Rep.* 420.  4 *Hill,* 22.  13 *John.* 40.  4 *Denio,* 264. 9 *Peters' Rep.* 376.  19 *John.* 496.  3 *Edw. Ch. Rep.* 143. *Id.* 424.  1 *Bos. & Pull.* 144.  25 *Wend.* 643.  10 *Id.* 116. 2 *John. Ch.* 182.  8 *Conn. Rep.* 513.  14 *Id.* 594.  1 *Hill,* 227. 3 *Wend.* 62.  2 *Denio,* 621.  4 *Bing.* 81.  1 *Clarke's Rep.* 32. *Id.* 432.  4 *Hill,* 472, 481.)  IX.  The certificates were not a violation of the restraining acts ; nor, if they were, would that invalidate the trust agreements.  (15 *Wend.* 256.  7 *Ad. & Ell. new series,* 232.  53 *Eng. Com. Law Rep.* 231. 6 *Watts & Serg.* 227.  10 *Paige,* 110.  6 *Scott's Rep.* 267. 2 *R. L. of* 1813, 234.  *Laws of* 1818, 242.  14 *John.* 205. 1 *R. S.* 712, §§ 3, 5, 6.  5 *Hill,* 590.  *S. C.* 6 *Hill,* 217. 4 *Wend.* 298.  7 *Id.* 276.  8 *Cowen's Rep.* 709.  1 *R. S.* 600. 2 *Hall's Rep.* 515.  22 *Wend.* 483.  13 *Conn. Rep.* 249.  22 *Pick.* 181.  3 *Metc. Rep.* 581.)  X.  But the defendant Charles H. Carroll is not at liberty to set up the want of authority on the part of the company, to enter into the transactions, nor the alleged illegality growing out of the objection that the certificates were violations of the restraining acts.  (7 *Wend.* 539. 8 *Id.* 480.  5 *Hill,* 137.  6 *Id.* 53.  *Cowen & Hill's Notes to Ph. Ev.* note 192, and cases there collected.  2 *Smith's Lead. Cases,* 437, note.  21 *Wend.* 94.  *Id.* 172.  1 *Barn. & Ad.* 142.  1 *Story's Eq. Jur.* §§ 191, 2, 3, 5, 7 and 203.  10 *Paige,* 326.  2 *Bro. Ch. Cases,* 380, 385.  3 *Cowen,* 537.  1 *Story's Eq. Jur.* § 375, b.  4 *Cowen,* 266.)  XI.  The certificate holders, being fully represented by the plaintiffs, are authorized, in equity, to ask the enforcement and to receive the benefits of the deeds and declarations of trust ; they being the parties

chiefly interested in the property, and whose money has been received by the defendants, in consideration of the trusts created mainly for their use. (9 *Paige*, 432. 10 *Id.* 465, 595. 4 *Kent's Com.* 3d ed. 307. 3 *John. Ch.* 261. 4 *Id.* 136. 6 *Ves.* 447. 1 *Dan. Ch. Pr.* 348, 349, 350, and notes to *Perkins'* ed. 4 *Paige*, 510. 1 *Story's Eq. Pl.* § 544 and notes. 2 *Y. & Coll.* 257.) XII. The charter of the Farmers' Loan and Trust Company has not expired, but it still exists as to trusts, and all its original powers except fire insurance. (*Laws of* 1822, *pp.* 47, 254. *Laws of* 1836, *p.* 281. 3 *Sandford's Ch. Rep.* 33. *Lewin on Trusts*, 83, 85.) XIII. The plaintiffs are therefore entitled to a decree for the specific execution of the trust agreements; the jurisidiction of the court, as a court of equity, being properly invoked for the purpose of enabling them to overcome the difficulties which the defendants have thrown around the performance of the trusts by the company. (4 *Paige*, 399. 2 *Id.* 509.)

*Points and authorities submitted on the part of the defendant Charles H. Carroll.*—The whole transaction between the company and Carroll, was in violation of law, and void. All these papers constitute one transaction, and it is a loan by the company, secured by mortgage ; or it is a trust, or a power in trust. I. These instruments do not create any trust or power in trust; and if there was a trust, it was not such an one as the company was authorized to take and execute. (1 *Russ. & Myl.* 605. 18 *Wend.* 319, and cases cited. 5 *Hill*, 225.) II. It was a loan secured by mortgage. (7 *John. Ch. Rep.* 42. 2 *Ball & Beat.* 277. 5 *Hill*, 228.) III. After the 28th February, 1837, fifteen years from the date of the act of incorporation, the company ceased to be a corporation, for any other purpose than to consummate engagements previously made; and at all events, the power to make trusts then expired. (2 *Paige*, 116. 2 *Cowen*, 420. 4 *Hill*, 76, 96. 2 *Kent's Com.* 298. 1 *R. S.* 600. 3 *Id.* 732, § 3. 3 *Barn. & Ald.* 10. 15 *John.* 383, 389, 390. 2 *Cranch*, 10.) IV. The loan made by the company was illegal and void. (1.) It was in violation of

The Farmers' Loan and Trust Company *v.* Carroll.

their charter, in stipulating for a premium or commission on the transaction, contrary to section 4 of chap. 211, of laws of 1836. (2.) The certificates were illegal, in being made transferable on their face. (7 *Wend.* 34. 2 *Cowen*, 666, 678.) V. It was in violation of the restraining acts. (3 *Wend.* 300. 9 *Paige*, 476. 9 *Wend.* 392. 2 *Cranch*, 127. 12 *Wheat.* 68. 13 *Peters*, 587. 14 *Id.* 122. 3 *Barn. & Ald.* 10. 3 *Wend.* 583. 7 *Id.* 276. 5 *Paige*, 653, 654. 20 *Wend.* 392. 2 *Myl. & Craig*, 83. 14 *Eng. Ch. Rep.* 87. 4 *Peters*, 188, 189. 1 *Hopk. Rep.* 26. 15 *John.* 389, 390.) VI. The transaction was usurious; whether it be called a loan on mortgage, or a trust, or power in trust, and cannot be enforced for any purpose, or to any extent. (1.) In the difference of two per cent of interest between the certificates loaned and the securities received. (2.) In the loan of securities that were worth much less than their nominal value. (1 *Durn. & East;* 208. *Pow. on Mort.* 297. 7 *Paige,* 582. 2 *Peters,* 537. 4 *Porter,* 128. 1 *Beatty*, 282. 2 *Moll.* 134. 2 *Paige,* 268. 4 *Hill,* 222, 234. 2 *Halsted's N. J. Rep.* 130. 1 *Russ. & Myl.* 50. · 8 *Simons,* 404. 4 *Peters,* 205. 9 *Id.* 419. 13 *John.* 40. 16 *Id.* 574. 3 *Sandf. Ch.* 215, 260, 261. 1 *Peters,* 87. 4 *Hill,* 255. 1 *Paige,* 546. 7 *Id.* 637, 559. 1 *John. Ch.* 536. 15 *John.* 389, 390. 7 *Hill,* 462, 463. 3 *Bos. & Pull.* 154. *Comyn on Usury,* 122.) VII. The holders of the certificates have no rights or remedies, legal or equitable, against this defendant. (1 *Russ. & Myl.* 605. 4 *Hill,* 442. 3 *Barn. & Ald.* 10. *Story's Conflict of Laws,* §§ 242, 243, 244, 3d ed.)

*C. P. Kirkland,* in behalf of the defendants represented by him, submitted several points, with numerous authorities; but as they are substantially embraced in those presented by the counsel for the defendant Charles H. Carroll, they are here omitted.

*By the Court,* WELLES, J. This cause has been argued with all the learning and ability demanded by the amount in controversy, and the importance of the principles involved

Many topics have been discussed in the arguments, as illustrative of the principal grounds of controversy, upon which, however, in the view I have taken of the merits of the cause, it is not necessary to express an opinion.  I shall, therefore, confine myself to the exposition of those questions and principles, which, in my judgment, dispose of the whole litigation, as far as they appear proper for the final adjudication of the present suit.

The question whether the trust powers conferred upon the Farmers' Loan and Trust Company by the act of April 17th, 1822, (*Sess. Laws of* 1822, *ch.* 240,) survive the fifteen years' limitation of the act by which that company was chartered, (*Sess. Laws of* 1822, *ch.* 50,) was elaborately discussed upon the argument, and has received a careful examination ; but upon submitting my views upon that subject to my brethren, there does not appear to be a unanimity of opinion ; and as the cause may be decided without reference to that question, the consideration of it here, is waived.

I. Assuming that such trust powers do continue, were the transactions in this case within the scope and purview of those or any other powers of the company, and what was the real and true nature of the transactions ?

The parties, when they entered into them, were careful to denominate them trusts.  If they have called them by right names they certainly are most unusual trusts, and it was well remarked on the argument, by the plaintiff's counsel, that the instruments creating them were anomalous in their form, although he contended that was no objection to them ; that they resembled trusts more than mortgages, and that effect should be given to them accordingly as they most assimilated to the one or the other.

The doctrine of uses and trusts was early introduced into the jurisprudence of England, probably as early as in the reign of Edward 3.  It was adopted by the ecclesiastics of that age to evade the statutes of *Mortmain,* and was borrowed from the *fidei commissum* of the civil law.  (1 *Cruise's Dig.* 354 *to* 359. *Story's Eq. Jur.* §§ 965, 6.)  The intention of the statute (27 *Hen.*

8 *ch.* 10,) was to destroy that double property in land which had been introduced by the invention of uses. But that intention was, to a great extent, defeated by the strict construction given to the statute by the subtlety of the early English chan-cellors, by holding that there were some uses to which the stat-ute did not transfer the possession, but which still continued separate and distinct from the legal estate, and were taken no-tice of and supported by the court of chancery, under the name of *trusts.* (1 *Cruise's Dig.* 411.) A trust therefore is now said to be a use not executed by the statute. (*Id.*) The same author describes a trust estate " to be a right in equity to take the rents and profits of lands, whereof the legal estate is vested in some other person; to compel the person thus seised of the legal estate, who is called the trustee, to execute such convey-ances of the land as the person entitled to the profits, who is called the *cestui que trust,* shall direct, and to defend the title to the land. In the mean time, the *cestui que trust,* when in possession, is considered, in a court of law, as tenant at will to the trustee." Another author has the following : "A trust can-not be more exactly defined than in the terms employed by Lord Coke for the definition of a use, to wit : *A confidence re-posed in some other, not issuing out of the land, but as a thing collateral, annexed in privity to the estate of the land, and to the person touching the land, for which cestui que use has no remedy but by subpœna in chancery."* (*Lewin on Trusts,* 15.) The author then analyzes the definition by a division of it into six parts, and giving to each a particular consideration and ex-planation. Upon the 2d he remarks, "It is a confidence *reposed in some other ;* not in some other than the author of the trust, for a person may convert himself into a trustee, but in some other than the *cestui que trust,* for as a man cannot sue a *sub-pœna* against himself, he cannot be said to hold in trust for himself. If the legal and equitable interests happen to meet in the same person, the equitable is forever absorbed in the legal ; as if A. die seised of the legal estate *ex parte paterna,* and of the equitable *ex parte materna,* the maternal line has no equity against the heir of the paternal." (*See also Goodright* v.

*Wells, Doug.* 777.) Three things are said to be indispensable to constitute a valid trust; first, sufficient words to raise it; secondly, a definite subject; and thirdly, a certain or ascertained object. (*Story's Eq.* § 964. *Crunys* v. *Coleman,* 9 *Ves.* 323.)

By the revised statutes of this state, all passive trusts are abolished, and the whole beneficial interest or equitable right to the possession and the reception of the rents and profits of the land, is vested in the *cestui que trust.* Express or active trusts are allowed for the following purposes: 1st, To sell land for the benefit of creditors; 2d. To sell, mortgage or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon; 3d. To receive the rents and profits of lands, and apply them to the education and support of any person during life, or any shorter period; subject to certain limitations and restrictions contained in §§ 37, 38, 39, (1 *R. S.* 727,) of the previous article; 4th. To receive the rents and profits of real estate, and to accumulate the same for the same purposes and within the same limitations and restrictions. (1 *R. S. p.* 727, § 45; *p.* 728, § 55.) By section 2 of the act of April, 1822, before referred to, the trust powers of this company are restricted to such trusts, "as are usual with other trustees," and they are only authorized to receive and execute such trust, as are declared in the deed or devise by which the property is conveyed to them in trust.

In the first article of the agreement between the company and Carroll, the former covenant that they will, in consideration of the conveyances which are declared to be in trust, "and with a view to enable the said Charles H. Carroll, to pay off and satisfy all the charges, liens and incumbrances upon the said real estate," immediately execute and deliver to Carroll the certificates, &c. In the second article, it is declared to be understood that Carroll shall apply the certificates, or their proceeds, to the payment of the liens and incumbrances. So far, I can perceive nothing that savors of a trust. It is nothing more than an agreement, by the company, to loan the certificates, and by Carroll, to make a certain application of them, or a portion of them. The company have no active duty to perform. Carroll

is to pay the incumbrances by means of the certificates thus obtained. The next article authorizes the company to make sales and conveyances of the land to purchasers, " whenever duly authorized and requested " by Carroll. It give the company no authority to sell, excepting as so authorized and requested. They are not to give covenants to purchasers, but Carroll is bound to do so when required. The company are to receive the consideration money, and to decide whether it is sufficient in amount in reference to the land to be conveyed. They are, in fact, to do nothing but execute conveyances when Carroll shall direct. They may, and I see not but they must, remain entirely passive, except as Carroll permits them to act. No discretion is reserved to them, except what shall be necessary to prevent their security being impaired ; a provision which would be quite necessary and proper, viewing the transaction in the light of a loan secured by these conveyances. The fourth article seems to be similar in its object and effect to the last. No duty whatever is imposed upon the company. Carroll's active duties are enlarged and specified, with a provision that they shall be so exercised as not to impair or diminish the security of the company, and saving their right to receive all moneys, &c. The fifth article makes it the duty of the company to collect moneys, &c. " upon the request of the said Charles H. Carroll, and to make sale or sales of the whole or any part of the real estate conveyed, at any time after ten years from the date of the agreement, " and at any time sooner, *should it become necessary for the safety and indemnity*" of the company. Here, then, are provisions for the benefit and security of the company only. They are to collect and receive moneys upon request of Carroll, and they may collect without his consent, and also may sell the whole or any part of the trust estate, after the lapse of ten years, and sooner, *if necessary for their safety or indemnity.* All this looks, to my mind, much more like providing for the repayment of a loan than the provisions of an active trust, or the specification of the duty of a trustee. It will be seen that this article leaves the company no discretion or power to act, until set in motion

by Carroll, except in case it becomes necessary for their safety and indemnity; when in effect, a proceeding in the nature of a foreclosure, not for the benefit of any *cestui que trust*, but for their own benefit exclusively, is authorized. And with respect to the duty of collections mentioned in the first part of the article, it is not to be undertaken unless requested by Carroll; and provision is made in other places for the appointment of an agent to make the collections and for the performance of other duties, all at the expense of Carroll. The sixth article provides for the appointment, by the company, of an agent, to be approved of by Carroll, resident in Livingston county, with full powers to collect and receive, on behalf of the company, all moneys, &c. to deliver deeds, &c. upon receiving the purchase money, &c. all to be paid over by the agent to the company, &c. This is no more than another of the means, in detail, adopted by the parties, with a view to the reimbursement of the company for the amount of the certificates. No mention or allusion is made to any *cestui que trust*. The seventh article requires all bonds and other securities, and papers to be to and with the company, "who are to receive all moneys," &c.; pointing, as in the last, solely to the reimbursement of the company. The eighth declares that the compensation of the agent, to be appointed under the sixth article, shall be fixed by the company, which, with all other expenses of the trust, is to be borne by Carroll. This provision, it seems to me, only has the effect to protect the company against any diminution of their expected profits to arise out of the transaction, and does not, in the remotest sense, fortify the idea of a trust. The ninth does nothing more than the law would probably have done without it, viz. requiring the company to recognize and fulfil outstanding leases—a provision as proper in view of a loan secured by these conveyances, as of a trust. The tenth article declares that Carroll shall pay and allow seven per cent. per annum to the company, on the amount of the certificates, to commence at the time of their delivery, which, by the first article, were to bear interest at five per cent per annum, the difference between the interest which the company were to pay, and that which

they were to receive, being two per cent, is declared to be " only a compensation, allowance or commission" to the company, for undertaking and executing the trust, &c. ; and the same article provides for selling, &c. in case interest remains due the company over thirty days.    While the parties here talk about a trust, not one of the characteristics of a trust appears.    The eleventh contains a provision for the redemption of the certificates, and a pledge of the capital of the company to that object.    The twelfth, is an agreement by the company to receive good bonds and mortgages, well secured, &c. upon portions of the premises conveyed, worth double the amount " *to be loaned* on the same ;" such bonds to be payable within ten years from the date of the agreement.    The last two articles certainly have nothing in them to characterize the transaction as a trust.    The 11th is designed to give credit to the certificates, and render the holders secure, and the 12th looks to the repayment of their amount to the company, and provides how it may be made.    The thirteenth, and last of the articles of agreement, is any thing but a declaration of trust.    It is merely a covenant on the part of the company to reconvey, upon payment being made in any of the ways before provided, and a covenant on the part of Carroll to pay any deficiency that may be found due the company, should the real estate, and securities to be taken on sales thereof, prove insufficient to reimburse them the amount of the certificates to be delivered to Carroll, and to indemnify the company against all loss or damage, &c.

I have thus gone through with an examination of all the provisions and articles of one of the agreements by which it is contended that a trust is manifested, with the view of discovering, if there were to be found the usual attributes and properties of a trust.    Supposing Carroll to be the creator of the trust, and this company the trustee, who is the *cestui que trust ?*    I confess that I have been unable to find any.    If it is said that they are the persons holding the incumbrances mentioned in the recitals to the agreement, the answer is that the trustee has no duty to perform to them, of any description whatever.    The company are not bound to pay them, and no privity exists between

them.  Suppose the incumbrances should never be discharged by the company or Carroll, could a bill be sustained by the creditors against the company, to compel the satisfaction of the incumbrances, or to enforce the execution of the trust in their favor? I think not; for the reason that the company have not agreed to pay these incumbrances.  It would be most unjust and inequitable to compel them to do so, because they have furnished Carroll with the means to do it; and it would, in effect, be requiring them to pay twice for the same thing, and that to persons with whom and themselves there appears to be no relation or privity.  I think, also, there may be some objection, on the ground that there is no certain or ascertained object; by which I mean that the papers and instruments by which it is contended the trust is manifested, do not indicate, with sufficient clearness, who are the beneficiaries of the trust.

The agreement recites 1st. That Carroll is the owner of certain real estate, situate, &c.; 2d. That there are several charges, incumbrances or liens outstanding and existing upon it; 3d. That Carroll, being desirous of having the real estate converted into cash and available securities, by the sale of the same in suitable parcels and at convenient times, the company had agreed to accept a conveyance of the real estate, and assume, perform and execute for Carroll, the trust thereby declared, &c. and that Carroll had, in pursuance of the agreement, executed and delivered to the company, on the same day, a conveyance in fee of the said real estate.  The agreement then witnessed that the conveyance was made by Carroll and accepted by the company, upon the special trusts and agreements thereinafter declared, &c.  Then follows the thirteen articles before mentioned.

In looking through this whole agreement, and regarding it in the light of a trust, I am at a loss to see the object.  What was the company to do but, in substance, to advance their credit to Carroll, and receive back the amount advanced, with interest?  Every provision of the agreement may be referred to and brought within these two objects.  They could not even sell any of the land without the concurrence of Carroll, unless in

default of the payment of interest or principal; and in either event, it was a means of reimbursement of their advance to Carroll, and for no other object.

Again ; Carroll was at liberty to put an end to their powers any day, by refunding, &c. upon which they were bound to reconvey the land to him. All these things are substantially the usual incidents of a loan secured by mortgage.

In the consideration of the question, it is proper to inquire not only whether the transaction can be upheld as a trust in any sense, but whether it is *such a trust* as the company by their chartered powers were authorized to undertake ; and also whether it is such a one as is authorized by the revised statutes.

By reference to the 2d section of the act of April, 1822, before referred to, it will be perceived that the trusts which the company are authorized to take, are such, and such only, as are declared in the deed or devise, by which the property to be held in trust is conveyed to them. It was said, on the argument, in answer to the objection that the alleged trust was not declared in the deed by which the land was conveyed, that the deed, declaration of trust, and the certificates were all one transaction, and should be considered the same as if they were all embodied in one and the same instrument. They may, perhaps, be regarded as one transaction ; but does it follow that they should therefore be treated as one instrument ? In view of the objection under the statute, I think it does not. All the evils which the statute was designed to guard against, are liable to exist as much in this case as in any other. It is not, in this view, a question of construction of the instruments, or whether each is to be interpreted with reference to the others, *but a question of power.* Where a corporation relies upon a grant of power from the legislature, for authority to do an act, it is as much restricted to the mode prescribed by the statute for its exercise, as to the thing allowed to be done. In this case the legislature say to the company, you may take conveyances in trust, and execute such trusts as are declared in the conveyances. It does not say you may take and execute trusts generally. I incline strongly to think the trust power of the

company was limited by the statute to such trusts as should be declared in the deed or devise, and as no trust is declared in the conveyance in this case, that the power has not been well executed.

If this transaction is a trust, is it such a one as is usual with other trustees. It was contended upon the argument on behalf of the plaintiffs, that the statute in this respect only intended to confine the company to legal trusts. If that be so, I can see no utility in the provision ; for it could not have been necessary, in order to prevent illegal trusts, to insert an express provision prohibiting them. It may be difficult to give an instance of a trust otherwise legal, which this company might not take, unless the present case affords an illustration ; provided it be a trust in any sense. I have supposed that where a usual valid trust is created, all parties but the trustee retire from any active participation in it, and that the beneficiaries designated could always go to a court of equity for the enforcement of their rights against the trustee. Here the trustee had nothing to do after the papers were executed, but to take care of itself; and no remedy, legal or equitable, is left to the *cestui que trust*, as I have before attempted to show, against the trustee.

The late Vice Chancellor Whittlesey, in an opinion upon denying a motion to dissolve the injunction mentioned in this cause, says, upon the point now under discussion, " The legitimate office of a trustee is to manage the estate or fund committed to him, with care and fidelity, invest its avails for the benefit of the persons interested, or, in other words, to receive and manage the property of others for the benefit of other parties. It is no part of the legitimate office of a trustee to give his own obligations, predicated upon the trust estate, or to assume any other liability than care and fidelity. Least of all is it legitimately or properly his office to give his own obligations simultaneously with the creation of the trust, and assume a trust created for the very purpose, and no other, of meeting the obligations executed by himself. The latter would be a mere security or indemnity for his own liabilities, and possesses, so far as I can perceive, no one feature of a trust." It seems to

me that there is much force and reason in these remarks, and they accord so well with my own views that I have thought proper to introduce them in this connection.

Again; was this transaction a trust authorized by the revised statutes? It was not claimed, upon the argument, to come within either of the subdivisions of the section authorizing express trusts, (1 *R. S.* 728, § 55,) excepting the first and second. Those are, 1st, to sell lands for the benefit of creditors; 2d, to sell, mortgage, or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon. It was insisted that the case did come within both of these subdivisions.

First, to sell lands for the benefit of creditors. Is this trust, as manifested by the agreement, created for that purpose? The argument is that it is for the benefit of the incumbrancers who are creditors, by putting in the hands of Carroll the means of paying and discharging them. But the question returns, how are they to be benefited? Where is the security that Carroll would be able to convert the certificates into money, or that the creditors would receive them in payment; or that Carroll would not misapply these means or convert them to purposes of speculation? The creditors have no power over the company, in any event, nor over Carroll beyond what they possessed before the transaction was entered into. It is not perceived how the creditors could be benefited in any legal sense by the creation of such a trust.

Second. To sell, mortgage, or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon. The inquiries and remarks made in reference to the first subdivision apply with the same force to this. The argument to bring the case within either of these provisions seems to me to be far fetched, and that after an examination of the agreement, it is impossible not to see that the object was one entirely different from any thing contemplated by the section of the statute in question, as I shall hereafter attempt to show.

II. It is claimed on the part of the plaintiffs, that if these instruments do not create valid trusts *per se*, they do create *powers in trust*, which may be lawfully executed by the com-

pany, with the aid of the court of chancery, for the purposes specified in the agreement. Many of the arguments to show that here was not a trust, go equally to prove that there was no power in trust. The revised statutes have attempted to restrict and simplify the doctrine of powers, and powers in trust; whether the attempt has been successful, is doubted by many. The doctrine was among the most intricate and difficult in the law, on account of its artificial character, and the refinements and subtleties of logic to which it was frequently carried. The statute, however, still recognizes the doctrine, under the modifications which it has undertaken to create.

A power in trust is to be understood in contradistinction to an estate in trust. The former is a mere authority or right to limit a use, while the latter is an estate or interest in the subject. A trustee is always invested with the legal estate; but this is not necessary with respect to the donee of the power. In the case of a power in trust, there is always a person other than the donee or grantee of the power, which person is called the appointee, answering to the *cestui que trust* in a simple trust. The revised statutes define powers in trust as follows: "A general power is in trust when any person or class of persons, other than the grantee of such power, is designated as entitled to the proceeds or any portion of the proceeds or other benefits to result from the alienation of the lands according to the power. A special power is in trust, first; when the disposition which it authorizes is limited to be made to any person or class of persons, other than the grantee of such power. Second; when any person or class of persons, other than the grantee, is designated as entitled to any benefit from the disposition or charge authorized by the power." (1 *R. S.* 734, §§ 94, 95.) These provisions show that in all cases of a power in trust, an appointee or beneficiary other than the grantee of the power, is contemplated. It is as necessary an ingredient in the case of a power in trust, as a *cestui que trust* is in the case of a conveyance or devise in trust. In the present case, the question naturally arises, who or where is the appointee or person or class of persons beneficially interested in the execution of the

power, other than the grantee of the power? No third person has any interest whatever in the performance of the stipulations and provisions of the agreements. A power in trust involves the idea of a trust, as much as a trust estate. In both cases a confidence is implied. The difference is in the mode of effectuating the object. In one case it is done through a conveyance or devise of an estate in trust, by which the grantee or devisee becomes seised of the legal estate in the land; in the other, by the creation or grant of a power by which the donee is invested with an authority in relation to the future use or disposition of the land.

Having shown, under a former head, that here was no trust, in the proper sense of the term, and believing that there can be no power in trust, independent of the idea of a trust; in other words, that there can be no power in trust without an appointee or beneficiary other than the donee of the power, I deem it unnecessary to spend more time to prove that here can be no power in trust; excepting to add that it appears to me that there is no power given in this case to the company, of a different nature from that which is in substance contained in many mere mortgages. Here is a power to sell the land in case of default of payment, and that is all the company are authorized to do, without the approbation of Carroll; and all they are empowered to do with his consent has for its object the same thing in substance—the repayment to them of the amount advanced. In both cases it is solely for their benefit, and the interest of any supposable appointee or beneficiary entirely lost sight of and disregarded.

III. The plaintiffs also contend that if the instruments between the parties should be held invalid as trusts and as powers in trust, they are still sustainable as covenants, on the part of the defendant Charles H. Carroll, to convey the lands when the company should dispose of them, or have a right to dispose of them, in order to satisfy the charge for which the agreements were entered into, and which yet remain unpaid.

The examination and discussion which I have given this case so far, has been more to meet the affirmative propositions

advanced by the plaintiffs' counsel, and to show what the nature and legal effect of the transaction was not, than what it was; and perhaps unnecessary time and labor has been devoted to that object; for if the view I entertain as to what its true character was, in substance and effect, be correct, it refutes and overturns each of those propositions. The one last stated will be met by endeavoring to show what, upon my first acquaintance with the case upon the argument, was strongly impressed upon my mind, and which has been fully confirmed by subsequent examination and reflection; and that is, not only that the legal effect of the execution and delivery of these instruments was to constitute a loan by the Farmers' Loan and Trust Company to Charles H. Carroll, and to secure the repayment thereof by the latter to the former—but that such was the understanding and intention of the parties at the time; although it was to be disguised by terms and language employed in the papers, as a trust.

It seems to me that no person can attentively examine all these papers together—the conveyances, the agreements, and the certificates with the *coupons* annexed—without being forcibly impressed with the idea of a loan. Notwithstanding the name by which the parties have chosen to call it, the essence of it all is to place Carroll in funds, no matter for what object, which funds the company are forthwith to furnish in the shape of these certificates; and to secure a return of the amount by Carroll, he conveys the lands and real estate to them. It was money, or something that he could convert into or use as money, that Carroll wanted. It was something with which he should be able, among other things, to pay debts. The first and second articles of the agreements show this to have been the case. The second seems to contemplate, in the first place, that he shall use the certificates as money, if practicable; and secondly, if not practicable, to dispose of them for money; and the certificates were as really obligations on the part of the company to pay money, as the notes of a bank could be. They were to be, and were in fact, something to answer the place of money. For that purpose Carroll wanted them, and for no

other ; and that such was the mutual understanding of the parties is further evident from the fact that after the execution of the papers, and before the company would allow them to be unconditionally delivered to Carroll, they were put into the hands of an agent of the company, who was dispatched with Carroll to Baltimore with a view to the latter using them in the liquidation of the incumbrances held by Tiernan and Mrs. Brinton.   After Carroll had subsequently placed the certificates in the hands of the agent of the Rothschilds to be remitted to Europe and sold, and had received an advance from the latter on account of them, he deposited with the company the whole amount of funds so obtained, and stipulated with the company to allow them to retain, in deposit, $26,000, for the payment of what might be due on the Tiernan mortgage ; the balance, together with such further sums as should be deposited with the company on his account by Rothschilds' agent, were to be held by the company subject to Carroll's drafts upon them.   It seems to me that in any and every aspect in which the matter can be viewed, it is seen to be nothing but a financial operation for the sole purpose of obtaining money by *Carroll upon* the security of the real estate in question.

The various proceedings between the parties, and the communications passing between them, previous to the consummation of the transaction by the execution and delivery of these instruments, go quite as far to prove it to be a loan as a trust, and I think much farther; for although the parties have sometimes remembered to call it a trust, yet the idea of an advance by the company to Carroll is a prominent and leading idea throughout.   Strike out that, and it is impossible to perceive a rational motive on the part of Carroll to induce him to engage in the transaction.   In some of the preliminary papers, the word " *loan*" is used, and in others " *trust*:"   I do not attach much importance to these circumstances.   The thing is to be judged of as a whole after its completion ; and if the parties have employed a false nomenclature in reference to the subject, that cannot determine its character or effect, but tends rather to cast suspicion upon it.   Although the conveyances by Car-

roll to the company are absolute in terms, and assume to convey the entire fee, yet the agreements executed by the parties, at the same time, show that they were intended only as security in the nature of mortgages for the repayment of the loan of the certificates ; and they are therefore to be considered as mortgages. (1 *R. S.* 756, § 3.)

IV. Having come to the conclusion that here was neither a valid trust nor a power in trust, but that the transaction was a loan secured by instruments in the nature of mortgages, it becomes necessary to inquire whether it can be enforced as such. To this it seems to me there are two objections. 1. The company did not possess the power of making loans. Their act of incorporation gave them such power in express terms, but the act was to expire in fifteen years, except as to insurances on lives and the granting of annuities; and admitting that the trust powers conferred by the amendatory act of the same session in which the company was chartered, would survive the fifteen years, there is nothing in any of the acts to countenance the idea that the company's loan powers would survive that period. It may be that they might invest their surplus funds if necessary, and take security for the re-payment; if so, it would be only an incidental power to those of insurance upon lives, granting annuities, and receiving and executing trusts, and perhaps would be implied in order fairly to carry out those express powers which are retained under the acts. It cannot be contended that the company can carry on the business of loaning moneys by virtue of any power specifically granted by any statutory provision in force at the date of these papers; much less that they could loan their credit in the way and manner here attempted.

The 7th section of the original act of incorporation expressly prohibits the company giving any obligation for the payment of money, except to enable them to fulfil any actual engagement they may make or enter into for loans, &c. or to enable the corporation punctually to pay any losses they might sustain, &c. It seems to me to be idle to spend time to show that the giving of these certificates did not come within the excep-

tion to this prohibition.   The certificates were the thing loaned, and when delivered, the engagement for the loan was completed on the part of the company; and it is impossible to perceive how they can be regarded as enabling or as designed to enable the company to fulfil an engagement for a loan.   2. This loan, and all the securities relating to it, were illegal and void, as being in violation of the usury laws.   The transaction was usurious upon its face, in making a difference of two per cent. between the interest to be paid by the company upon the certificates, and that to be paid by Carroll.   In other words, that it was *per se* usurious.   The nominal value of the certificates, at the time they were issued and delivered to Carroll, was not equal to the amount which Carroll was to pay for them, by just the difference in the interest between the two.   To illustrate.   Suppose A. agrees to lend B. $1000, and it is a part of the agreement that B. shall receive the loan in negotiable promissory notes of third persons, due at a future day, bearing legal interest from the time of making the loan, and that B. shall repay the amount by the time the notes become due, with interest at the rate of nine per cent from the time of the loan. It seems to me that no one would deny that such a transaction would be usurious.   If it would not, then why might not the borrower, in the case supposed, legally bind himself to repay the amount borrowed, with interest at the rate of 10, 15, 20, or any other rate per cent?   And if 9 per cent would be illegal, 7 per cent would be equally so, if the notes borrowed bore an interest of only 5 per cent.   The difference would be the same in both cases.   And upon the same principle, if the notes constituting the loan were payable at a future day without interest, an agreement for repayment, with any rate of interest whatever, must be usurious.   It results from the fact that the present *prima facie* value of the securities loaned are affected by the question whether they are upon interest or not, or by the rate at which they draw interest.   If the $1000 of notes are payable in one year without interest, they are worth $1000 less the discount; that is to say, they would be worth at the time of the loan $934,58; and the borrower would agree to pay

therefore (on the supposition that the $1000 was to be refunded with 7 per cent interest,) what was worth at the time, $1000; or a bonus of $65,42 beyond the legal rate of interest.

The trust certificates in the case at bar, were each worth, on the same principle, at the time they were issued, $714,28 each, which is the par value, less the discount at two per cent, for twenty years; and by the operation of the instruments between the parties Carroll was in effect to pay to the company a bonus of $285,72 on each $1000 of the loan; making a total of $27,143,40 in the two transactions, beyond the legal rate of interest.

I hold it to be law that in all cases of a loan where it appears upon the face of the transaction, that the lender is in any manner to receive more than the legal rate of interest as a compensation for forbearance upon the thing loaned, whatever the thing may be, it is usury *per se*. *Res ipsa loquiter*. The distinction is between a loan and a sale or guaranty. In the latter case a man may lawfully contract to receive a compensation beyond the legal rate of interest, provided it is not a cover for usury. Whether it be so or not is generally a question of fact, depending upon the intent of the parties. He has a right to put his credit or responsibility in market, and receive what he can fairly get for it, provided always it is not a device to cover up and hide from view a usurious intent. We have a long train of decisions, both in England and this country, recognizing and establishing that distinction, which are principally collected and referred to in the case of *Ketchum* v. *Barber et al.* (4 *Hill*, 224 *to* 255, *and S. C. in error*, 7 *Id.* 444 *to* 463.) Such, also, was the principle of the decision in the late case of *More* v. *Howland*, (4 *Denio*, 264.) It is also held or plainly implied in most of those authorities, that if the transaction assumes the character of a loan, it is within the usury statutes, provided more than the legal rate of interest is contracted for.

But I am prepared to hold the transaction usurious upon the evidence. These certificates, as before remarked, were treated by the parties as money. They were loaned to Carroll as such, and the repayment by him at their nominal amount, with interest

at 7 per cent per annum was provided for. I think the weight of evidence is decidedly that at the time the loan was made, the certificates were not worth in market their par value. A number of witnesses were examined on this point, and most of them testify in substance that at the time this loan was effected they were at a discount of at least twelve and a half per cent, and not a witness, as I believe, shows them to have been of their par value at any time during the spring of 1838, when the negotiations were consummated. That the depreciation might have been owing in part or in whole to the pressure of the money market at the times to which the witnesses refer, does not in my judgment alter the case. Carroll bound himself to return their nominal amount in money, with lawful interest. It turned out that they were sold by Carroll, in order to raise money, at a ruinous sacrifice.

V. It is claimed by the plaintiff, that whatever may be the character or legal effect of these transactions, the mortgages to Tiernan and Mrs. Brinton legally and equitably belong to the Trust Company, they having been paid with funds furnished by the company, and the one to Tiernan having been assigned to the company by the consent of Carroll, and that the company are entitled, in equity, to be subrogated to them, and to have a decree in this suit for their foreclosure. To this claim I cannot assent, for several reasons. 1st. The agreements were absolute, that Carroll should receive the certificates; and he had the legal right to do with them as he pleased. The money he raised upon them was his to all intents and purposes, at least as against the company, who retained no lien upon the certificates or the proceeds of their sales, in law or equity, for any purpose whatever. If he violated his agreement to extinguish the incumbrances, it could only be the foundation of a personal claim upon him. 2d. These mortgages were in fact extinguished and paid off by Carroll, or with his money, and could not be kept on foot as debts secured by mortgages. If they were paid for by the company at all, it was as Carroll's agents, and by money raised by him by the sale of these certificates, and if they are valid in the hands of the holders,

Carroll may be liable upon his endorsement of them as guarantor. 3d. They could not be held by the company to protect their title, for that title has been shown to be vicious for its illegality ; and the mortgages being in their hands, can only be regarded ancillary to such title, and must fall with it. 4th. The doctrine of subrogation only applies to lawful and meritorious transactions. It is a doctrine which prevails only in equity ; and it would be absurd to say if the transactions were illegal and void, and cannot be upheld for that reason, that these mortgages, which if paid for at all by the company, were based upon such illegal transactions, and taken by them by way of security for the loan, càn be enforced by them.

VI. The only question that remains to be considered is whether the other plaintiffs who are the holders of a portion of these certificates, are entitled to any relief in this suit.

The argument in support of the affirmative of this proposition is founded entirely upon the assumption that the transaction which the preceding views condemn as usurious, illegal and void, was lawful, and can be enforced in some way. It is unnecessary to discuss the question on that assumption. If it was a loan upon usurious interest, and the certificates were under seal, as the plaintiffs contend, and, as I think, the proof establishes, the holders, as assignees, took them *cum onere*, chargeable with notice of all the material facts connected with their original concoction and subsequent mutations. If they did not possess the ingredients of commercial paper, that fact was sufficient to put all persons, dealing in them, upon inquiry, and deprives them of any protection as innocent or *bona fide* holders. I think they stand in no better situation, in this respect, than the company would after having redeemed the certificates.

I am therefore of the opinion that the holders of the certificates are not entitled to any decree in their favor. If I am right in holding the transaction a loan, and that it is affected with usury, then no one is entitled to any benefit from any thing connected with or growing out of it. In other words, the court will not aid a party who has been connected with it, or

who stands chargeable with notice.  *Potior est conditio possidentis.*

There were many points raised and discussed upon the argument which have not been adverted to in this opinion.  The views expressed have superseded the necessity of doing so.

The result is that the bill must be dismissed with costs.

ALLEGANY GENERAL TERM, September, 1849.   *Mullett, Sill, and Marvin, Justices.*