MORE and another *vs.* HOWLAND and another.

The *bona fide* sale of one's credit, by way of guaranty, or by making a note for another's accommodation, though for a compensation exceeding seven per cent., is not usurious, if the transaction be unconnected with a loan between the parties. *Per Curiam.* BEARDSLEY, J., dissenting.

THE defendants, who were foreign fruit dealers, in the city of New-York, and had commenced business upon a small cash capital, applied to the plaintiffs in October, 1844, and stated that not having an established credit in the market, they could transact business much more advantageously, by having upon the paper which they should have occasion to issue, the name of some mercantile firm in good and established credit in the city of New-York; and that it would also be desirable to the defendants in some of their anticipated commercial transactions to have a credit opened for them with some wholesale vendors of goods in their line of business; such credit to be guaranteed to the satisfaction of such vendors; and the defendants proposed that the plaintiffs should become such guarantors at' a reasonable commission for the trouble and risk attendant upon the same—stating that when at any time obtaining any guaranty of their commercial paper from the plaintiffs, the defendants would place in their hands the commercial paper of the country customers of the defendants, to be collected by the plaintiffs. Other modes of securing the plaintiffs were also mentioned. The plaintiffs assented to the proposition, it being expressly agreed between the parties, that the plaintiffs were not to lend or advance any money, or make any payments for the defendants, but only to guaranty to those who might give credit to the defendants, the payment of such debts as the defendants might contract on the credit of the plaintiffs. The defendants were to provide the money to pay, at maturity, all the credits guarantied by the plaintiffs; and as a compensa· tion, or commission, for the use of their credit as aforesaid, and their trouble in respect to the business, the plaintiffs were to be

allowed and paid two and a half per cent. on every sum guar-antied for the term of four months. The defendants also stated, that the mode of transacting the business of guaranty-ing their paper most beneficial to them was, that the plaintiffs, instead of endorsing the defendants' paper, should hand to the defendants, for use in their business, the negotiable promissory notes of the plaintiffs, payable to the defendants; and that the defendants would always, at the time of obtaining any such note, place in the hands of the plaintiffs the memorandum note of the defendants, or some commercial paper maturing at or before the day on which the plaintiffs' notes would come to ma-turity; it being understood that the notes or paper given to the plaintiffs, when the defendants' names were on them, should not be used by the plaintiffs; and they never were used. No loan or advance, by the plaintiffs to the defendants, was ever agreed upon or contemplated between the parties.

Under this arrangement the plaintiffs received from the de-fendants, from time to time, the business paper of their country customers, and memorandum notes made by the defendants themselves, and delivered to the defendants the negotiable promissory notes of the plaintiffs, payable in four months, for which the plaintiffs were allowed a commission of two and a half per cent. In August, 1846, the defendants gave the plain-tiffs a bond and warrant of attorney, to secure the payment of $14,000, on account of the liabilities which the plaintiffs had contracted for the defendants; and the plaintiffs entered up judgment and issued execution in December following. The defendants moved the circuit judge of the first circuit to set aside the judgment, on the ground that the transaction was usurious; but the circuit judge denied the motion, and assign-ed his reasons, as follows:

EDMONDS, Cir. J. The question in this case is simply this, whether these transactions were a loan by the plaintiffs of money, goods, or things in action, within the statute? If they were, the bond and warrant of attorney were void, and the judgment and execution must be set aside.

I am unable to perceive why the principle laid down by Chief Justice Nelson, in *Ketchum* v. *Barber*, (4 *Hill*, 224,) does not govern this case. In that case Ketchum received 2½ per cent. for guaranteeing the note then in question; and the chief justice said that was not a loan. In his view, it was a mere sale of the guaranty of his firm; and after stating that the question was whether a bona fide sale of one's credit or security for the use and benefit of another, unconnected with a loan, was, *per se*, usurious, he held that it was not. Cowen, justice, delivered a dissenting opinion, in which he argued strenuously, as he has in several other cases in that same volume, in favor of applying the usury laws to such transactions. Bronson, justice, concurred in the result, with the chief justice, though for different reasons. If it might be questioned how far that case did establish the point that a sale of credit or security is not within the usury laws, in the subsequent case of *Seymour* v. *Strong*, (4 *Hill*, 258,) Cowen, justice, in delivering the opinion of the court, speaks of the case of *Ketchum* v. *Barber* as having settled the principle that a sale of credit at a usurious rate is not within the statute.

The sale by the plaintiffs of their guaranty in this case, was not therefore, *per se*, usurious. Such a sale may be used, however, as a cover for a usurious loan, and whenever that is the case, the law will undoubtedly apply. In the cases of *Dunham* v. *Dey*, (13 *John.* 40,) and *Dunham* v. *Gould*, (16 *id.* 367,) it was found by the jury, that the transaction was, in fact, a loan, and the exchange of notes merely a cover. If a jury had so found in this case, the result must necessarily have been the same. But on the other hand, if the transactions involved in this judgment are merely a sale of credit for the benefit of the defendants, then they are to be regarded as unexceptionable under the usury laws. Hence, the only question remaining for our consideration is, the question of fact as to the light in which the dealings between these parties are justly to be regarded.

To determine whether these were loans, it is barely necessary to inquire, of whom did the defendants obtain the money

the procurement of which was their great object in entering into the arrangement? Never of the plaintiffs, but always of some person of whom they borrowed the money on the strength of the plaintiffs' credit and guaranty. The plaintiffs were not to advance any money; but by the contract it was stipulated that they were not, and that the defendants were to take up the bills as they fell due; and the only contingency on which the plaintiffs were to advance any money, was in the event of the bills being dishonored; and then they were to pay, not in pursuance of an agreement to loan money to the defendants, but on their contract of guaranty. They were to pay, not to the defendants, but to those of whom the defendants had borrowed it; and though all the money which the defendants obtained under the arrangement was obtained by loans, not a dollar of it was obtained of the plaintiffs. I do not see, then, how it can be said, that the plaintiffs have loaned to the defendants any money. They have merely supplied the defendants with such a guaranty that they could, and did, obtain loans of somebody else. This was held in *Ketchum* v. *Barber*, and in *Seymour* v. *Strong*, to be legal.

The transaction does not purport to be a loan. It is a contract for compensation for the trouble and inconvenience of raising money to meet the debt of another. That such compensation may be stipulated for and received, without subjecting the party to the imputation of usury, was decided in *Trotter* v. *Curtis*, (19 *John.* 160,) and in *De Forest* v. *Strong*, (8 *Conn. Rep.* 519.) (*See also, Suydam* v. *Westfall*, 4 *Hill*, 211, 224.) This motion must therefore be denied.

*S. Sherwood*, for the defendants, now made the same motion here, by way of appeal from the decision of the circuit judge.

*C. O'Conor*, for the plaintiffs, opposed the motion. The following cases were cited. (*Dunham* v. *Dey*, 13 *John.* 40; *Dunham* v. *Gould*, 16 *id.* 367; *Fanning* v. *Dunham*, 5 *John. Ch.* 122; *Ketchum* v. *Barber*, 4 *Hill*, 224, (*a*); *Sey-*

(*a*) 7 *Hill*, 444, *S. C. in error.*

*mour* v. *Strong, id.* 255 ; *Suydam* v. *Westfall, id.* 221 ; *Trotter* v. *Curtis,* 19 *John.* 160.)

*By the Court,* BRONSON, Ch. J. The plaintiffs sold their guaranty or credit to the defendants, for a commission of two and a half per cent. on securities payable in four months. The rate of compensation is a matter of no legal importance ; for if the plaintiffs had a right to charge any thing, they might charge whatever sum the defendants would agree to pay. There was no negotiation, nor agreement, for or about a loan ; nor was any loan ever made. It was a sale of credit, and nothing more. The defendants may have made a bad bargain ; but there was no usury in the case. (*Ketchum* v. *Barber,* 4 *Hill,* 224.) It is easy enough to call the transaction a loan ; but that is only giving it a wrong name for the purpose of bringing the case within the statute of usury. That, like every other statute, ought to be rigidly enforced, whatever may be thought of its policy ; but we cannot make it a universal remedy for bad bargains without usurping the power of legislation. As the law now stands, a man has as good a right to sell his credit as he has to sell his goods or his lands ; and if he deal fairly, he may take as large a price as he can get for either of them.

This may be a fit occasion to say, that I have either been misreported in *Ketchum* v. *Barber,* (4 *Hill,* 236,) or else I was very unfortunate in expressing my meaning. There was room for a question in that case whether the referee had drawn the proper conclusions of fact from the evidence which was laid before him ; and that was the only doubt I ever felt about the case. And in my judgment, he did not go so far in holding that there was a sale, and no loan, as the court of errors did in holding the same thing, though about a different transaction, in *Rapelye* v. *Anderson,* (4 *Hill,* 472.) If the referee in *Ketchum* v. *Barber* was right in finding that the first transaction was the sale of endorsements, and that there was no loan, he was clearly right in holding that there was no usury.

In the case now before us I can see nothing like usury; and in that opinion my brother Jewett concurs.

BEARDSLEY, J. dissented.

Motion denied.