“McAdam J.
The defendant conducts what he calls the Lincoln Loan and Guarantee Association, and makes *297 loans to persons in financial needs and straits. The plaintiff applied to him for a loan of $300 and this followed : Two notes were made by the plaintiff, one for $100, payable in two months, and the other for $200 payable in four months. The defendant endorsed on the back of the notes, The Lincoln Loan and Guarantee Company, the name under which he does business, and gave the plaintiff a letter to the Mount Morris Bank and that institution discounted the notes at lawful rates and gave the plaintiff $300 less the discount. Before endorsing the notes the defendant took unto the so-called Lincoln Loan and Guarantee Company a mortgage for $405 to secure $300 on the notes and $105 its fees in endorsing and guaranteeing the notes. At maturity the notes were not paid and were taken up by the Loan and Guarantee Company, which now holds them. The so-called company undertook to foreclose the chattel mortgage, and the present action is to enjoin the foreclosure on the ground of usury, alleging that the defendant was really the lender of the money and the circumlocutory scheme a mere subterfuge adopted to hide the offence. It is familiar law that a person may under circumstances similar to those stated loan his credit and charge what he pleases for it (Moore v. Howland, 4 Denio, 264; 1 Edmonds’ Select Cases, 371; Ketchum v. Barber, 4 Hill, 224; Barber v. Ketchum, 7 Ib., 444); and is equally well established that if the transaction (no matter what form it assumes) is a mere device to cover usury, courts will not allow the drapery of form to hide the truth, but deal with the matter in its true light according to the fact. There are circumstances in this case significantly strong which entitle plaintiff to the temporary equitable relief she seeks.
“(1.) The sum charged was outrageously excessive, the plaintiff was imposed upon, advantage was taken of her circumstances, and her worldly goods were mortgaged to make sure the payment of over 100 per cent, interest in *298 addition to principal. At this rate the borrower is verily the slave of the lender.
Clark Bell, for respondent.
Jas. C. de La Mare, for appellant.
“ (2.) There is no such entity as the Lincoln Loan and Guarantee Company; it is neither a corporation nor joint stock company. It is an alluring name to invite the needy. It means J. S. Forgotston, nothing else, the mortgagee having no legal existence is mythical, cannot legally foreclose a mortgage or authorize others to foreclose it. Nor can the defendant foreclose it as the mortgage was under seal and not made to him.
“ (3.) The name used by the defendant is notice to the world that he makes loans as well as gives guarantees, and it is a question here whether he did not in point of fact make the loan using the bank as his medium or agent merely.
“ (4.) If the defendant is allowed to foreclose the mortgage the plaintiff’s home will be broken up and an injury done not easily estimated in dollars and cents. On the other hand enjoining the foreclosure until the facts can be determined at the trial can do the defendant no great harm, and he has certainly received enough in the way of interest to compensate him for the delay. The plaintiff has given, security to pay all damages the defendant may sustain and the mortgage continues upon the property as before. To dissolve the injunction might imply that courts look with favor upon 100 per cent, loan and guarantee offices, when they are in fact a growing evil calculated to make the poor poorer by engulfing them in debt. The motion to continue the injunction until the trial will be granted.”
Per Curiam.
The order appealed from is affirmed, with ten dollars costs, and disbursements, upon the *299 opinion of the court below, excepting only the statement “ Nor can the defendant foreclose it as the mortgage was under seal and not made to him and as to the correctness of this proposition no opinion is express.