(12 Misc. Rep. 434.)

## ORVIS v. CURTISS.

(Common Pleas of New York City and County, General Term. May 6, 1895.)

1. APPEAL—REVIEW—OBJECTIONS NOT RAISED BELOW.
   The objection that a defense in an action in a district court of New York City was not pleaded on return day cannot be raised for the first time on appeal.

2. USURY—WHAT CONSTITUTES.
   An agreement whereby one party is to furnish the capital necessary to carry on the business, is to share equally in the profits, and, in case of loss, is guarantied the return of his investment, and a sum in excess of the legal rate of interest, is usurious.

3. SAME—NOTE BASED ON USURIOUS AGREEMENT.
   A note based on a usurious agreement, or given pursuant to a compromise of a usurious agreement, partakes of the same character as the agreement.

4. PARTNERSHIP—INTEREST ON OVERDRAFTS—USURY.
   Such agreement does not constitute the parties partners, hence the rule of interest on overdrafts under partnership agreements does not apply.

Appeal from Eleventh district court.

Action by Charles E. Orvis against William H. Curtiss to recover the first installment of interest due on a note. A judgment was entered in favor of plaintiff, and defendant appeals. Reversed.

The action was brought to recover six months' interest, due July 3, 1893, upon the following promissory note:

"$4,000.                                            New York, Jan. 3, 1893.

"Three years after date I promise to pay to the order of Chas. E. Orvis four thousand dollars, at Orvis Bros. & Co., interest to be paid semiannually, at rate of five per cent. per annum. Value received.          W. H. Curtiss."

The above note was given in settlement of a claim made by the plaintiff under a guaranty of $5,000 net profits mentioned in the sixth clause of the following agreement:

"New York, January 3rd, 1887.

"The following agreement is hereby made this 3rd day of January, 1887, between William H. Curtiss and Charles E. Orvis, for the purpose of purchasing and carrying five hundred shares of the stock of the American Cotton Oil Trust, viz.: First. A joint account shall be opened at Orvis Brothers & Co., known as the 'Account Japan,' in which W. H. Curtiss and C. E. Orvis shall be equally interested. Second. Upon joint order, or the order of W. H. Curtiss, the account may purchase and sell at any time any portion of (500) five hundred shares, but at no time in excess of five hundred (500) shares. Third. W. H. Curtiss agrees to furnish at once to Orvis Brothers & Co. such sums of money as may be the difference between the said price paid for the stock and forty-five per cent. of the par value of the same. Fourth. O. E. Orvis guaranties that the account shall be carried for a period of six months from this date, and agrees to furnish forty-five hundred dollars for each one hundred shares. Fifth. It is hereby mutually agreed that this account shall be closed up and terminated and settled in full on or before July 3rd, 1887. Sixth. Such net profits as shall accrue in this account shall be equally divided, and W. H. Curtiss hereby especially guaranties that the share of the profits of C. E. Orvis shall not be less than five thousand dollars, and agrees that when the account is closed he (W. H. Curtiss) will pay over and make good to C. E. Orvis any deficiency that there may be, so that

C. E. Orvis shall within the period of six months from date receive, either from the account or from C. H. Curtiss, as guarantor, the sum of not less than five thousand dollars. Seventh. C. E. Orvis has agreed this day with Orvis Brothers & Co. that they will set aside the necessary amount to pay for this stock whenever called upon; therefore the account shall pay Orvis Brothers & Co. interest at 6 per cent. from this date, and they shall receive the brokerage on each transaction made for this account.

"[Signed]                                        W. H. Curtiss.  [Seal.]
"[Signed]                                        C. E. Orvis.    [Seal.]

"Signed, sealed, and delivered in the presence of E. W. Orvis, Jan. 3rd, 1887."

For decision on appeal from a judgment in favor of plaintiff for the second installment of interest, see 28 N. Y. Supp. 728, 32 N. Y. Supp. 1147.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Taylor & Parker, for appellant.
H. G. Harris, for respondent.

DALY, C. J.   The plaintiff and defendant operated under the agreement of January 3, 1887, and the result was a loss, which defendant fully paid up to plaintiff's firm.   The plaintiff then claimed the sum of $5,000 under the guaranty in the sixth clause of the agreement.  Such claim remained unsettled until about January 3, 1893, when it was settled between the parties by defendant giving the note, bearing interest, which is the basis of the claim in this action.   The defense upon the trial was that the agreement of 1887 by which $5,000 of profits were guarantied to the plaintiff was usurious, and that the note in suit, being given pursuant to such agreement, was void.   This defense seems to have been established. While the defense of usury was not pleaded upon the return day, it was pleaded at the trial, and proof taken thereof, without objection.   Respondent cannot be heard to object for the first time upon appeal that the defense was not pleaded.

Usury is made out by the contract itself, which clearly secured, and was intended to secure, to the plaintiff, a compensation in excess of legal interest for advancing the sums necessary to carry on the defendant's contemplated speculation in American Cotton Oil Trust stock.   It is argued that the agreement on plaintiff's part was not for a loan of money, but merely for a sale of his credit, by the aid of which defendant was enabled to procure money from plaintiff's firm, and for which sale of credit the parties were entitled to agree upon whatever compensation they thought fit.   Such is the rule where the agreement is for the sale of credit merely, and there is no negotiation nor agreement for or about a loan and no loan is made.   A man has as good a right to sell his credit as he has to sell his goods or his lands; and, if he deal fairly, he may take as large a price as he can get for either of them.   More v. Howland, 4 Denio, 264.   But this agreement was plainly for an advance of money by plaintiff on defendant's behalf, and not a sale of credit, for the agreement between the parties provides:

"Fourth. C. E. Orvis guaranties that the account shall be carried for a period of six months from this date, and agrees to furnish $4,500 for each 100 shares."

Besides this, the plaintiff's own evidence was that he was the capitalist, "to furnish the money," that he "advanced all the money," that he "was to furnish the capital," that he "furnished the money"; and he did so through his own firm.

It is also argued that the agreement was between partners, and that such agreements are not affected by the usury laws. This is so because the relation of debtor and creditor does not exist, in the ordinary sense, between partners. 27 Am. & Eng. Enc. Law, 1016, and cases cited; Payne v. Freer, 91 N. Y. 43. The partners may stipulate for more than legal interest on overdrafts by each other, and the transaction is not usurious, because the excess of interest is paid into the firm, and swells the profits, in which the borrowing partner ultimately shares; and also because the proportionate amounts of capital contributed by each, as fixed in the copartnership agreement, are altered by such overdrafts; and, as pointed out in the case last cited, one partner might receive profits at the rate of 20 per cent. or more upon the amount he left in the business, while others would receive a much smaller percentage upon their investments. These reasons do not apply to the present case. The loan was not an incident to a permanent and continuing partnership relation, but began and ended with and was the basis of the so-called partnership; the agreement in question being manifestly nothing more than an agreement for a loan to enable a customer of the plaintiff's firm to operate in a particular stock. No partnership, in a proper sense, existed between the parties. The plaintiff took none of the risks of a partner, as distinguished from those of a lender of money. He stood in no danger of losing the capital he furnished, because he was to receive that back in any event. He did not even stand in any danger of losing the use of his money, because he was to receive at least $5,000 profits in excess of 6 per cent. interest, however disastrously the venture might result. He was not exposed to any liability as a partner for the acts of his copartner, because the transaction was such that the copartner could obtain no ostensible authority, and the agreement was such that he had no authority in fact to bind the plaintiff. He could deal only with the firm to which the plaintiff belonged, and the plaintiff was under no risk except that which pertains to every loan of money, i. e. the inability of his debtor to repay. In cases of ordinary partnership, the evils which the usury laws are designed to prevent are not likely to occur where overdrafts are contemplated as possible, and provided for on terms fixed in advance; but it would be too easy to evade such laws if agreements like the present were exempted from their operation, for a more convenient cover for usury could not possibly be devised. Not only improvident speculators, but necessitous borrowers, could be forced to pay illegal rates for money under the mask of a partnership between the lender, or one of the lender's firm, and the speculator or borrower. Such pretended partnership could embrace operations in stock of

some standard value, with a guaranty of exorbitant profits to the lender, and usury be thus legally protected.

As the usurious character of the original contract prevents its enforcement by the plaintiff, he acquired no better right by taking the note of the defendant in pursuance of its terms, whether as security for the whole sum claimed or as a compromise of such claim. Contracts void by usury are incapable of being made valid by a new agreement based upon the original consideration. Where a security void by usury is given up, and a new one taken, that is also void. Treadwell v. Archer, 76 N. Y. 196. Had plaintiff taken defendant's note for the whole amount of the guaranty, it would have been void for usury if the agreement was void for that reason; and a note taken for a less amount than the guaranty stands on no better footing.

The fact that such note was received on what is called a compromise of the plaintiff's demand under the agreement does not make it any more enforceable than the original agreement would have been. Otherwise, part of the usurious claim would always be collectible under the pretense of a compromise. While it is the general rule that upon the compromise of a disputed claim the original consideration will not be the subject of inquiry, nor the debtor be permitted to set up defenses based thereon, this rule does not apply to claims made in contravention of public policy or express statute. The taking of usury is not only forbidden by statute, and all securities given in pursuance thereof declared void, but the act is made a misdemeanor by the criminal law. No holder of usurious paper can therefore pretend to an honest belief of a legal claim, such as is necessary to support a compromise and prevent an inquiry into the original consideration for securities taken in settlement. Any claim may be sufficient consideration to support a compromise, provided that the claimant honestly supposed that a valid claim existed, however mistaken he might have been. Dovale v. Ackerman (Com. Pl. N. Y.) 33 N. Y. Supp. 13. But the holder of a usurious security can have no such honest conviction. The note which is the basis of this action is therefore affected by the illegality of the agreement and transaction which form the consideration of it, and no recovery should have been allowed the plaintiff. Judgment reversed, and a new trial ordered, with costs to appellant, to abide event. All concur.