BROWN et al. v. FLETCHER et al. (two cases).

(Circuit Court of Appeals, Second Circuit.   May 10, 1918.)

No. 191.

1. TRUSTS ⬥331—ACCOUNTING—CONCLUSIVENESS.
    In a suit to establish a claim against a testamentary trustee by one not a bona fide purchaser from an assignee of the beneficiary, a decree of the Surrogate's Court, settling the trustee's accounts and directing the payment of the fund to the beneficiary was a good defense.

2. JUDGMENT ⬥683—BAR—JUDGMENT OF STATE COURT.
    In a suit by one not a bona fide purchaser from an assignee of the beneficiary under a testamentary trust to establish a claim against the testamentary trustee and the beneficiary, a judgment of the Supreme Court of New York in a suit by the beneficiary against the trustee and the original assignee, holding that the assignment was usurious and void, was a good defense.

3. USURY ⬥72—CONTRACT OF SALE—EXPECTANT ESTATE—INQUIRY.
    A contract by the beneficiary under a testamentary trust containing no words of loan or intimation of a borrowing, and which was in terms a contract of sale or assignment of his beneficial interest, did not prevent investigation of circumstances to test transaction for usury, as the purchaser of an expectant estate takes a risk which explains the small consideration, and the value on vesting is no criterion of the value when the bargain is made.

4. TRUSTS ⬥147(1)—TESTAMENTARY TRUST—ASSIGNMENT BY BENEFICIARY.
    If the beneficiary under a testamentary trust, by a contract purporting to sell or convey his beneficial interest, surrendered no more than his chance of living long enough to reduce the fund to possession, he should be held to his bargain, though ill-advised.

5. USURY ⬥41—TRANSACTION—ASSIGNMENT OF BENEFICIAL INTEREST.
    An absolute assignment of a beneficial interest under a testamentary trust in consideration of a loan of $5,000 or $6,000, which, less commissions, etc., netted about $3,500, and under which the lenders might receive $17,500, and were to pay the premiums on the beneficiary's life insurance assigned to them, whereby the lenders avoided any legal contingencies or dangers, and would receive the capital at all events, with unlawful additions, was usurious.

    Ward, Circuit Judge, dissenting.

Appeals from the District Court of the United States for the Southern District of New York.

Bills by John A. S. Brown and Frank E. Schermerhorn, as trustees for Clara Schermerhorn under the will of Thomas Cunningham, deceased, against Austin B. Fletcher, as testamentary trustee of Conrad Morris Braker, under the will of Conrad Braker, Jr., deceased, and Conrad Morris Braker. From decrees (244 Fed. 854) dismissing the bills, plaintiffs in each suit appeal. Affirmed.

Plaintiffs appeal from decrees dismissing bills, with costs. The father of defendant Braker left a will under which defendant Fletcher ultimately became trustee, inter alia, to retain the principal of certain portions of his estate (meantime paying his son, said defendant, the income) until in the case of one fund of $10,000 20 years had passed from testator's death, and as to another fund of $17,500 and upwards said son should reach the age of 55, at which dates the son defendant should receive the funds absolutely, if then living.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In 1901, 11 years after testator's decease, defendant Braker being then 43 years old and in receipt of a considerable income from his father's estate, sought to borrow money on these interests in expectancy. He got about $6,-000 (less "commissions") in consideration of executing to one Rabe what purport to be absolute assignments or conveyances of all his "estate, right, title, and interest of, in and to" the funds aforesaid. Rabe was a "dummy" for one Burr, who shortly after organized the New York Finance Company, to which Rabe transferred what he had gotten from Braker. These plaintiffs, by divers conveyances not thought necessary to enumerate, assert the title Rabe obtained, and claim the additional protection of being bona fide purchasers without notice or knowledge of any equities of Braker's or defects in Rabe's or Burr's title. In 1910 defendant Braker was 52 years old, when the 20 years after his father's death expired, and the $10,000 fund fell in; and when he was 55, in 1913, the $17,500 fund likewise vested.

The suit to recover the $10,000 fund (Equity 7–231) was begun against Fletcher, trustee, alone in 1911, was dismissed on the merits in the District Court (203 Fed. 70), reversed and dismissed for lack of jurisdiction by this court (206 Fed. 461, 124 C. C. A. 367), but jurisdiction established by the Supreme Court (237 U. S. 583, 35 Sup. Ct. 750, 59 L. Ed. 1128), after which this court (231 Fed. 92, 145 C. C. A. 280) held (1) that a judgment of the Supreme Court of New York, dated February 5, 1912, in suit of Braker v. New York Finance Co. et al. (sufficiently described in above reported opinions) was not a defense, because the present plaintiffs "obtained their lien before suit was brought"; (2) that a surrogate's decree of August 2, 1912 (sufficiently described in 203 Fed. 70, supra), denying the fund to these plaintiffs, was also not a defense, because the proceeding in that court was not begun until after this action in equity was instituted; and (3) that Braker was a party to this action, so necessary that in his absence "the court cannot adjudicate the case." Thereupon an amended bill was filed, and subpœna served on Braker April 20, 1916. So far as he is concerned, this action is no older than that service, and in his answer he sets up both judgment and decree as bars to suit.

The action to recover the $17,500 fund (Equity 10/112) was begun in 1913, and the proceedings in the Supreme and Surrogate's Courts do not affect it. The bill was dismissed in the District Court for lack of jurisdiction, which was, however, established on appeal (235 U. S. 589, 35 Sup. Ct. 154, 59 L. Ed. 374), and the cause returned for trial. The two actions were then tried together, and both transactions held to be usurious loans; the testimony showing circumstances both as to relation of parties and documents executed similar to that considered in a long line of decisions in the courts of this state (enumerated in Provident Life & Trust Co. v. Fletcher [D. C.] 237 Fed. 108), some of which relate to dealings under this Braker will, and by this defendant.

On this appeal, the contentions requiring consideration are, on appellee defendant's part, that it was fully shown and properly held below that as matter of fact these pretended sales of expectancies were in truth mere covers for usurious loans, that the doctrine of "catching bargains" invalidates both transactions, and that both the judgment and decree above mentioned are complete defenses as to the action first brought.

Fredric W. Frost, of New York City (Herbert C. Smyth, of New York City, and Monroe Buckley, of Philadelphia, Pa., of counsel), for appellants.

Selden Bacon, of New York City, for appellees.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). That the defendant Braker is an incompetent spendthrift, of no judgment whatever, may be quite true. His father's opinion of his wisdom is

plainly inferable from the will giving rise to this (and much other) litigation. But when in 1901 he either borrowed from or sold to the dummy Rabe, at rates which gave Rabe's principals the chance or certainty of profits at the rate of five to one, he was of mature years, not impoverished, except temporarily and by his own extravagances; he was no raw and needy youth. To such a man we are agreed that the doctrine of catching bargains, has no application. A majority of the court do not find it necessary to express, as to the New York decisions above referred to and relied on below, either general assent or dissent. It is preferred to dispose of these appeals on narrower grounds.

[1, 2] In the suit for the $10,000 fund we hold that both the judgment of the Supreme Court of this state and the Surrogate's decree are good defenses in bar of any such claim as is here advanced against Braker, and unless plaintiffs can have decree against Braker they can never recover, if for no other reason than that their title flows from him alone. The trustee, Fletcher, is a stakeholder only.

In 231 Fed. 92, 145 C. C. A. 280, this court had not Braker before it; he was not then served. When he was brought in the Surrogate's decree was years old, and upon the trial of this case he proved a chain of connections between Burr, who was to all intents the New York Finance Company, and these plaintiffs, which convince us that Brown et al. are not bona fide pruchasers of or lienors upon anything the New York Finance Company had from or through Braker; on the other hand, they are but the cloak or cover for Burr, who from the beginning has been and still is in control of this litigation. There were not even purchasers "pendente lite," as was supposed; they are not purchasers at all, but tools of Burr. This is a finding of fact on the evidence now before us.

[3] As to the suit for the $17,500 fund, it is undoubtedly true that the paper title given to Rabe, and lying at the foundation of plaintiff's claim, contains no words of loan, nor any intimation of a borrowing by Braker. It is in terms a contract of sale and in the present tense. But this fact does not prevent investigation of the circumstances attending its execution and delivery, in order to test the transaction for usury. One who really buys an expectant estate, by the very nature of his purchase takes a risk, which explains and justifies the small price he pays. The value on vesting, the worth when danger of loss is past, is no criterion of value when bargain made.

[4] If Braker gave up or forewent no more than his chance of living long enough to reduce to possession his father's bounty, he should be held to his bargain, ill-advised and foolish as it may have been.

[5] In this instance, however, two things occurred which in the judgment of a majority of this court gave a different aspect to the transaction. Braker wanted $5,000, he got $3,500 (out of which he paid a broker $500 for introducing him to Rabe et al.), and it was substantially agreed that the difference between request and receipt was so great that the Rabe-Burr party agreed to pay the premiums on such life insurance as they wanted and for which Braker agreed to

253 F.—2

apply. This was a part of the agreement, and as much a part as was the document of sale on which plaintiffs must and do rely. Policies were accordingly obtained, and assigned to Rabe, "creditor" of Braker. He certainly was no creditor, if there was a bona fide present sale made.

The second matter deemed important is that the assignment or document of transfer, after vesting in Rabe as fully as words could do it Braker's rights in and to the fund in question, continues thus:

"I do by these presents, for myself, my heirs and executors and administrators, covenant, grant, and agree to and with the said Frank L. Rabe, his heirs, executors, administrators, and assigns, that he, the said Frank L. Rabe, his heirs, executors, administrators, and assigns, shall and will as hereinbefore declared and set forth receive the net sum of [$17,500] when and as soon as [the fund of which the amount in suit is a part] shall become due and payable under and by virtue of the provisions [of Braker, Sr.'s, will], to have and to hold the same unto the said Frank L. Rabe, his heirs," etc.

Thus (first) by insurance at Braker's expense (the difference between his paying direct and having his price or advance abated in consideration of Rabe's paying being nil) covering the period of suspense when Braker might by dying prevent vesting, and (second) by Braker's covenant to pay out of whatever he had whencesoever procured, if the estate of Braker, Sr., proved valueless, the $3,500 principal of plaintiff's assignors was placed beyond the hazard of every contingency, except inability to collect out of Braker or his insurers, as the case might be. This avoidance of legal (as distinguished from natural) contingencies or dangers is one of the oldest marks of usury, when such elimination of genuine hazard secures gains above lawful usance. . Chesterfield v. Janssen, 2 Vesey, 125; Colton v. Dunham, 2 Paige (N. Y.) 272. And as to the effect of such superadded personal liability as that of Braker's, see Leavitt v. Enos, 155 App. Div. 584, 140 N. Y. Supp. 862.

It is said that Braker's covenant is no more than the guaranty considered in Orvis v. Curtiss, 157 N. Y. 657, 52 N. E. 690, 68 Am. St. Rep. 810. We cannot think so, for there was in that case no advance or transfer of money from plaintiff to defendant, but (as definitely found) a joint venture or "contract of partnership," with a guaranty against positive loss by one partner to the other. Here any personal responsibility is utterly inconsistent with that present sale of a real contingency on which alone plaintiffs can securely rest.

It follows that, without considering the wholly contradictory and irreconcilable tale told by Braker on one side and Burr et al. on the other, as to what was contemporaneously said, we find the written or admitted words evidencing the contract made, such as to show something more than and different from the purchase of a contingency, viz. an avoidance of all hazard except that of being paid by Braker or his insurers, whose obligation was held by Braker's "creditor"—i. e., Rabe or his assignees. From this apparatus of papers plaintiff cannot escape. The "treaty was for a loan." Every effort was made to avoid that word by those furnishing the money, but when it was furnished the would-be borrower had in substance and

effect agreed to "return the capital at all events" with unlawful additions. This is usury. Dowdall v. Lenox, 2 Edw. Ch. [N. Y.] 274.
Decrees affirmed, with one bill of costs.

WARD, Circuit Judge (dissenting). Unless we are to hold that there can be no such thing as an improvident sale of an expectancy in a decedent's estate, on the ground that an attempted sale must be regarded as a cover for a loan of money on usury, the assignments by Braker to Rabe of his legacies under the fourteenth and fifteenth articles of his father's will were sales. The instruments he executed expressly so stated, and the testimony of the witnesses to the same effect is overwhelming. There was in neither assignment any promise by Braker to repay the money he received. It is true that in the assignment of seven-tenths of his legacy of $50,000 under the fifteenth article of the will he guaranteed that it should produce $35,000 to the purchaser. In the case of Orvis v. Curtiss, 157 N. Y. 657, 52 N. E. 690, 68 Am. St. Rep. 810, the defendant not only guaranteed plaintiff against loss of the money he put into a joint adventure in stocks, but also guaranteed him a profit of $5,000. The similarity between that case and this is that the court below held in it that the contract made was really a loan upon usury (12 Misc. Rep. 434, 33 N. Y. Supp. 589), whereas the Court of Appeals refuse to treat the contract as anything else than what it professed to be. In that respect the decision is an authority for our treating the transactions in this case as sales.

The policies of insurance on Braker's life were assigned to Rabe and his assigns, and the premiums were paid by him and them. It was natural and proper for the purchaser to take out insurance against the contingency of Braker's death before anything should vest in him under his father's will. I do not suppose that a loan upon bottomry would become usurious if the lender protected himself against loss by insuring the arrival of the vessel. That would be a perfectly independent contract.

The policies were not assigned to Rabe "as creditor," as stated in the opinion of the court. On the contrary, the form of assignment used was absolute, and not the form of assignment of the policy as collateral.

The complainants sued as owners of one-half the legacy under the fifteenth article and of the last installment of $10,000 under the fourteenth article of the will, by virtue of a sale of the same to them under a collateral note securing an advance of $10,000. The court holds that a decree of the surrogate in August, 1912, made after this suit had been instituted in the District Court, is res adjudicata as to the legacy under the fourteenth article of the will. It is quite clear, however, under Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867, and Waterman v. Bank, 215 U. S. 33, 30 Sup. Ct. 10, 54 L. Ed. 80, that the federal courts may determine the rights of citizens of other states in a decedent's estate, and that the state court must recognize that determination in making distribution. The complainants in this case, citizens of Pennsylvania, submitted their

claim to the legacy under the fourteenth article of the will to the District Court of the United States, and that court obtained jurisdiction of them and of the trustee and of the claim, which jurisdiction continued unless or until the bill should be dismissed. The fact that Braker was subsequently brought in as an indispensable party did not create jurisdiction in the court for the first time. The joinder related and enabled the court to render a decree with the same effect as if he had originally been a party.

Of course, if the complainants were mere tools of Burr et al., as the court finds, they are bound by the judgment in the state court action; but I think the proofs show that they were bona fide lenders of $10,000 four years before the action in the state court was brought. The proofs leave much to be desired in respect to straightforwardness of all the parties concerned, but for these reasons I think both judgments should be reversed.